# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| MONOLITHIC POWER SYSTEMS, INC., a Delaware corporation; and CHENGDU MONOLITHIC POWER SYSTEMS CO., LTD., a Chinese Corporation, | § § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CASE NO. 6:20-cv-00876-ADA |
| MERAKI INTEGRATED CIRCUIT (SHENZHEN) TECHNOLOGY, LTD., a Chinese Corporation; and PROMATE ELECTRONIC CO., LTD., a Taiwanese corporation, | § § § § § § | JURY TRIAL DEMANDED |
| Defendants. | § § § | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT MERAKI'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................ 1

II.  STATEMENT OF FACTS .......................................................................................... 1

III.  LEGAL STANDARD ................................................................................................. 3

IV.  ARGUMENT .............................................................................................................. 4

    A.  Meraki Is Subject to Personal Jurisdiction in This Forum .................................... 4

        1.  Meraki Purposefully Directed Its Products to Residents in This Forum ................................................................................................... 4

        2.  Meraki Purposefully Places Its Products in the Stream of Commerce Knowing They Will Enter This Forum ................................... 7

        3.  Meraki's Actions Led to a Foreseeable Injury ........................................... 9

        4.  Personal Jurisdiction over Meraki Would Be Reasonable and Fair ........ 10

    B.  MPS's Claims Are Adequately Pled and Should Not Be Dismissed .................. 11

        1.  MPS Sufficiently Pled Direct Infringement of the Asserted Patents ....... 11

        2.  MPS Sufficiently Pled Induced Infringement .......................................... 12

        3.  MPS Sufficiently Pled Contributory Infringement .................................. 13

        4.  MPS Sufficiently Pled Willful Infringement ........................................... 14

        5.  MPS Sufficiently Pled Misappropriation of Its Trade Secrets ................. 14

        6.  MPS's Claims for Tortious Interference and Unfair Competition Are Not Preempted ................................................................................. 18

        7.  MPS's Trade Secret, Tortious Interference, and Unfair Competition Claims Do Not Fall Under the Forum Selection Clause of Its Confidentiality Agreement ................................................. 19

V.  CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

CASES

*360 Mortg. Grp. LLC v. Homebridge Fin. Servs., Inc.*,
　　No. A-14-CA-847-SS, 2016 WL 900577 (W.D. Tex. Mar. 2, 2016) ...................................18

*3D Sys., Inc. v. Aarotech Labs., Inc.*,
　　160 F.3d 1373 (Fed. Cir. 1998)..................................................................................6

*Absolute Software, Inc. v. World Comput. Sec. Corp.*,
　　Case No. A-09-CA-142-LY, 2009 WL 10678335 (W.D. Tex. Dec. 2, 2009)..........................5

*Aero Indus., Inc. v. DeMonte Fabricating, Ltd.*,
　　396 F. Supp. 2d 961 (S.D. Ind. 2005) ........................................................................5

*Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*,
　　Case No. W:13-cv-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ..............................13

*Alpha Pro Tech, Inc. v. VWR Int'l LLC*,
　　984 F. Supp. 2d 425 (E.D. Penn. 2013) ....................................................................17

*AMID, Inc. v. Medic Alert Found. U.S., Inc.*,
　　241 F. Supp.3d 788 (S.D. Tex. 2017) .......................................................................19

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009).....................................................................................4, 11

*Bell Atl. Corp. v. Twombly*,
　　550 U.S. 544 (2007).....................................................................................4, 11

*Bench Walk Lighting LLC v. LG Innotek Co., Ltd.*,
　　Case No. 20-51-RGA, 2021 WL 65071 (D. Del. Jan. 7, 2021) .................................5

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
　　21 F.3d 1558 (Fed. Cir. 1994)............................................................................8, 10

*BidPrime, LLC v. SmartProcure, Inc.*,
　　Case No. 1:18-cv-478-RP, 2018 WL 8223430 (W.D. Tex. June 18, 2018) ....................14, 15

*Britton v. Co-op Banking Grp.*,
　　4 F.3d 742 (9th Cir. 1993) ................................................................................19

*Burger King Corp. v. Rudzewicz*,
　　471 U.S. 462 (1985)....................................................................................10, 11

*Caddy Prods., Inc. v. Greystone Int'l, Inc.*,
　　2005 WL 3216689 (D. Minn. Nov. 29, 2005) .............................................................5

CASES

*Cont'l Intermodal Grp. - Trucking LLC v. Sand Revolution LLC*,
  Case No. 7:18-cv-147, Dkt. 51, Slip Op. (W.D. Tex. Apr. 8, 2019) .......................................12

*Crystal Semiconductor Corp. v. OPTI Inc.*,
  1997 WL 798357 (W.D. Tex. July 14, 1997) ............................................................5

*DeSantis v. Wackenhut Corp.*,
  793 S.W.2d 670 (Tex. 1990)...................................................................15, 16

*DHI Grp., Inc. v. Kent*,
  397 F. Supp. 3d 904 (S.D. Tex. 2019) .....................................................18, 19

*DPT Labs., Ltd. v. Bath & Body Works, Inc.*,
  1999 WL 33289709 (W.D. Tex. Dec. 20, 1999) ..................................................17

*Embarcadero Techs., Inc. v. Redgate Software, Inc.*,
  Case No. 1:17-cv-444-RP, 2018 WL 315753 (W.D. Tex. Jan. 5, 2018) ...............................18

*Grain Processing Corp. v. Am. Maize-Prods., Co.*,
  840 F.2d 902 (Fed. Cir. 1988).....................................................................5

*Grand Time Corp. v. Watch Factory, Inc.*,
  Case No. 3:08-cv-1770-K, 2010 WL 92319 (N.D. Tex. Jan. 6, 2010) ....................................15

*Hascore USA, Inc. v. N. Am. Hoganas, Inc.*,
  Case No. SA-13-CA-466-OLG, 2013 WL 12183224 (W.D. Tex., Aug. 23,
  2013) ..........................................................................................3, 7

*Hildebrand v. Steck Mfg. Co., Inc.*,
  279 F.3d 1351 (Fed. Cir. 2002)....................................................................6

*HTC Sweden AB v. Innovatech Prods. and Equip. Co.*,
  Case No. 3:07-cv-232, 2010 WL 2163129 (E.D. Tenn. Feb. 25, 2010) ..................................5

*IKON Office Solutions, Inc. v. Furnish*,
  Case No. SA-06-CA-434-FB, 2007 WL 9702530 (W.D. Tex. Oct. 31, 2007) .......................15

*Kaneka Corp. v. SKC Kolon PI, Inc.*,
  198 F. Supp. 3d 1089 (C.D. Cal. 2016) ............................................................5

*Largan Precision Co, Ltd v. Genius Elec. Optical Co.*,
  86 F. Supp. 3d 1105 (N.D. Cal. 2015) ..............................................................6

*Miner, Ltd. v. Anguiano*,
  383 F. Supp. 3d 682 (W.D. Tex. 2019)............................................................15

CASES

*Moore v. Harney Hardware, Inc.*,
    2006 WL 1342820 (S.D. Tex. May 15, 2006) ........................................................5

*N. Am. Philips Co. v. Am. Vending Sales, Inc.*,
    35 F.3d 1576 (Fed. Cir. 1994) ........................................................................9

*Nuance Comm's, Inc. v. Abbyy Software House*,
    626 F.3d 1222 (Fed. Cir. 2010) ..................................................................3, 4, 7

*Osteotech, Inc. v. GenSci Regeneration Scis., Inc.*,
    6 F. Supp. 2d 349 (D.N.J. 1998) ....................................................................5

*Parity Networks, LLC v. Cisco Sys. Inc.*,
    No. 6:19-cv-207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019)...............11, 12, 13, 14

*Rollins v. Maui Dreams Dive Co.*,
    2010 WL 4386755 (D. Haw. Oct. 29, 2010) ..................................................19, 20

*Saint-Gobain Tech. Fabrics Am., Inc. v. Checkmate Geosynthetics, Inc.*,
    Case No. 6:09-cv-557-Orl-35KRS, 2010 WL 11507686 (M.D. Fla. Feb. 2,
    2010) ........................................................................................................6

*Slyce Acquisition Inc. v. Syte - Visual Conception Ltd.*,
    422 F. Supp. 3d 1191 (W.D. Tex. 2019)........................................................8, 9

*Spear Mktg., Inc. v. BancorpSouth Bank*,
    791 F.3d 586 (5th Cir. 2015) .......................................................................17

*Suncoast Post-Tension, Ltd. v. Scoppa*,
    Case No. 4:13-cv-3125, 2014 WL 12596471 (S.D. Tex. May 13, 2014)..............16

*Wayne Pigment Corp. v. Halox*,
    220 F. Supp. 2d 931 (E.D. Wis. 2002)...........................................................6

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980).................................................................................10

*Wyeth v. Nat. Biologics, Inc.*,
    Case No. Civ. 98-2469, 2003 WL 22282371 (D. Minn. Oct. 2, 2003)...................16

STATUTES

Tex. Civ. Prac. & Rem. Code § 134A.007 .................................................................18

**TABLE OF AUTHORITIES**
**(continued)**

CASES

**OTHER AUTHORITIES**

Fed. R.Civ. P.12(b)(6)......................................................................................................................4

# I.    INTRODUCTION

This lawsuit arises out of the brazen misappropriation of Plaintiff Monolithic Power Systems, Inc.'s ("MPS") trade secrets by Defendant Meraki Integrated Circuit (Shenzen) Technology, Ltd. ("Meraki"), whose co-founders, Mr. Wayne Dong and Ms. Elaine Sheng, infiltrated MPS to gain access to valuable and highly confidential information about MPS's synchronous rectifier technology, and then fled to China to found Meraki. Meraki does not appear to deny that it has MPS's confidential information, or that it uses this confidential information to undercut MPS's pricing or to sell products that it advertises as pin-for-pin compatible with MPS's products. Instead, Meraki's Motion to Dismiss is meant to distract the Court from the damning facts that underly this dispute and gloss over MPS's well-pled complaint. Meraki's tactics should not be rewarded—its motion should be denied. *See* Dkt. 22 ("MTD").

# II.    STATEMENT OF FACTS

MPS is a recognized leader in the design, development, manufacture, and sale of various semiconductor products, including synchronous rectifier products which regulate voltage for power chargers and adapters in order to power everyday devices such as smart phones and laptops. MPS First Amended Complaint ("FAC"), Dkt. 21 ¶¶ 4, 37–38. MPS has invested significant resources to develop and protect its intellectual property, which includes both trade secrets and a robust patent portfolio. *Id.* ¶¶ 4, 35–42, 78. Unlike MPS, Meraki has taken shortcuts to develop its knock-off products, including the theft of MPS's highly confidential trade secrets and other confidential information. *Id.* ¶¶ 14–15.

Meraki was founded to directly compete with MPS in the synchronous rectifier market by misappropriating MPS's highly confidential information. *Id.* ¶¶ 66–69. Meraki's founders, Mr. Dong and Ms. Sheng were previously employed at MPS and used their short tenure to misappropriate MPS's trade secrets and proprietary information. *Id.* ¶¶ 43–65. Though it was

formed in April 2017, Meraki was able to release its competing products in less than two years, compared to the nearly seven years of research and development that MPS invested in its MP6908 ideal diode. *Id.* ¶ 73; MTD at 3. Meraki was only able to develop and release its products in the market this rapidly due to its misappropriation of MPS's trade secrets. FAC ¶ 78. In fact, some of Meraki's products have the same function, feature, package, and applications as MPS's products. For example, the Meraki MK1808 and MPS MP6908 have the same block-level circuits for realization, same features, pin definition, and are used for the same applications. *Id.* ¶¶ 74–75. Given the length of time required to complete everything associated with proper product development, it is not possible for Meraki to "independently" develop and release a product in this condensed timeline. *Id.* ¶ 78. Meraki is now taking advantage of its reduced research and development costs from the misappropriation of MPS's trade secrets to displace MPS as a supplier of synchronous rectifier products by directly undercutting MPS's prices for several customers. *Id.* ¶ 79. Meraki has also used and publicly disclosed MPS's trade secrets by filing for patent applications in China that incorporate MPS's stolen highly confidential information. *Id.* ¶¶ 81–84.

Meraki has targeted MPS's customers, including Shenzhen Lianxunfa Technology Co., Ltd. ("Lianxunfa"), Shenzhen ABP Technology Co., Ltd. ("ABP Group"), Bull Group Co., Ltd. ("Bull"), and Delta Electronics, Inc. ("Delta") by touting the compatibility of the MPS and Meraki products and undercutting MPS's prices using trade secret information that was unlawfully misappropriated by Meraki. *Id.* ¶¶ 28, 70–71. Customers of Meraki, such as Lianxunfa, ABP Group, Bull, Delta, and Lenovo, have incorporated Meraki's synchronous rectifier products in chargers and adapters, which rely on MPS technology protected by the Asserted Patents and MPS's trade secrets—all to the detriment of MPS. *Id.* ¶ 70.

MPS takes all necessary precautions to protect its highly valuable trade secret information. *Id.* ¶¶ 39–42. Mr. Dong and Ms. Sheng, however, circumvented these protocols, and a forensic analysis of their MPS laptops uncovered that they connected external storage devices to their laptops to copy highly confidential information. *Id.* ¶¶ 62–64.

Meraki is very familiar with the Asserted Patents based on Mr. Dong's and Ms. Sheng's tenure at MPS. *Id.* ¶¶ 85–87. In order to directly compete with MPS, Meraki induces third-party distributors, such as Promate, to offer for sale and import into the United States Meraki's infringing products by referring customers and potential customers located in the United States to those distributors. *Id.* ¶ 15; Ex. A to Wong [sic] Decl., Dkt. 22-2 at 8–9. Meraki also intends for its products to reach the United States through online marketplaces that sell products in the United States, such as Taobao. *Id.* Meraki also knowingly places its products into the stream of commerce by incorporating its synchronous rectifier products into direct or indirect customer products such as AC/DC chargers manufactured by companies such as ABP Group, Bull, or Lianxunfa. FAC ¶¶ 28, 70–72. Further, Meraki knowingly sells its products to customers, such as Lenovo and Delta, who have a well-established, large U.S. presence, for incorporation before those products are imported and sold in the United States. *Id.*

## III. LEGAL STANDARD

Texas's long-arm statute reaches to the constitutional limits so the only question remaining is whether exercising personal jurisdiction offends due process. *Hascore USA, Inc. v. N. Am. Hoganas, Inc.*, Case No. SA-13-CA-466-OLG, 2013 WL 12183224, at *2 (W.D. Tex., Aug. 23, 2013). To determine whether specific jurisdiction exists, the Federal Circuit determines whether: (1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Nuance Comm's, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). The

Supreme Court has cautioned that only in rare situations is the plaintiff's and state's interest in adjudicating the dispute so attenuated as to be outweighed by the burden of subjecting the defendant to litigation in the forum. *Id.* A plaintiff need only make a *prima facie* case that personal jurisdiction exists if there is no evidentiary hearing. *Id.* The court must accept as true plaintiff's uncontroverted allegations and must resolve all conflicts between facts contained in the parties' documentation in plaintiff's favor. *Id.* To survive a Rule 12(b)(6) motion, a plaintiff need only allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## IV. ARGUMENT

### A. Meraki Is Subject to Personal Jurisdiction in This Forum

Specific jurisdiction exists over Meraki because Meraki has the minimum contacts in the forum necessary for jurisdiction and exercising that jurisdiction would be fair and reasonable. In the alternative, MPS requests leave to conduct targeted jurisdictional discovery concerning Meraki's importation of products into this judicial district, and Meraki's placement of its products into the stream of commerce. *See* Sample Order Governing Proceedings - Patent Case at 2 ("[T]he Court generally grants leave for the parties to conduct targeted [jurisdictional] discovery.").

#### 1. *Meraki Purposefully Directed Its Products to Residents in This Forum*

Meraki's activities were purposefully directed at residents of this forum. Prior to commencement of this lawsuit, Meraki directed one of its distributors, Promate, to import the Accused Products to a potential customer, Sawblade, located in Austin for incorporation into Sawblade's products. Ex. A to Wong [sic] Decl. at 8–9. After being contacted directly by Sawblade

through Meraki's publicly available[1] sales email address, Meraki directed Promate to import multiple samples of five of its products directly to Sawblade. *Id.* at 6–9. Promate then provided pricing information to Sawblade for these products, but noted that it would only be importing free samples at this time to "prevent a customs declaration." *Id.* at 5–6. While Promate did not "sell" the Accused Products in the United States, Dkt. 20-1 at 2, Promate did import and offer to sell the Accused Products into the United States—all at the direction of Meraki. This importation creates an adequate basis for personal jurisdiction. *See Bench Walk Lighting LLC v. LG Innotek Co., Ltd.*, Case No. 20-51-RGA, 2021 WL 65071, at *5 (D. Del. Jan. 7, 2021) (finding foreign plaintiff, via an established distribution channel, purposefully intended for its products to enter U.S. forum).

There is no de minimis exception to specific jurisdiction and multiple courts have found that the importation or sale of a single infringing product is enough to confer personal jurisdiction over a defendant. *Absolute Software, Inc. v. World Comput. Sec. Corp.*, Case No. A-09-CA-142-LY, 2009 WL 10678335, at *6 (W.D. Tex. Dec. 2, 2009) (listing cases).[2] The lack of a de minimis exception especially makes sense in the context of patent infringement, given that a patentee can prove infringement by showing that a sample of a product meets all limitations of a patent claim. *Kaneka Corp. v. SKC Kolon PI, Inc.*, 198 F. Supp. 3d 1089, 1102 (C.D. Cal. 2016) (citing *Grain Processing Corp. v. Am. Maize-Prods., Co.*, 840 F.2d 902, 911 (Fed. Cir. 1988)). It follows,

---

[1] Meraki's website, which can be translated into English, contains Meraki's contact information and is another example of Meraki's presence in the forum. Whether Meraki is subject to personal jurisdiction in this forum does not rise and fall with the level of interactivity of Meraki's website. *See HTC Sweden AB v. Innovatech Prods. and Equip. Co.*, Case No. 3:07-cv-232, 2010 WL 2163129, at *3 (E.D. Tenn. Feb. 25, 2010) (noting that the Federal Circuit has not stated a rule for the weight that a website should receive in a personal jurisdiction of analysis).

[2] *See Moore v. Harney Hardware, Inc.*, 2006 WL 1342820, at *2–3 (S.D. Tex. May 15, 2006); *Caddy Prods., Inc. v. Greystone Int'l, Inc.*, 2005 WL 3216689, at *2 (D. Minn. Nov. 29, 2005); *Osteotech, Inc. v. GenSci Regeneration Scis., Inc.*, 6 F. Supp. 2d 349, 354 (D.N.J. 1998); *Aero Indus., Inc. v. DeMonte Fabricating, Ltd.*, 396 F. Supp. 2d 961, 966–69 (S.D. Ind. 2005); *Crystal Semiconductor Corp. v. OPTI Inc.*, 1997 WL 798357, at *3–5 (W.D. Tex. July 14, 1997).

therefore, that the importation of samples by the defendant into a forum is sufficient to establish personal jurisdiction. *See, e.g.*, *Saint-Gobain Tech. Fabrics Am., Inc. v. Checkmate Geosynthetics, Inc.*, Case No. 6:09-cv-557-Orl-35KRS, 2010 WL 11507686, at *6 (M.D. Fla. Feb. 2, 2010) (bringing samples of accused product to a trade show for display sufficient to establish jurisdiction); *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1378 (Fed. Cir. 1998) (sending of samples and issue of price quotations to forum residents sufficient to establish jurisdiction). For example, in *Wayne Pigment Corp. v. Halox*, the court held that the defendant purposefully directed its activities to the forum by sending samples of the accused product to the forum. 220 F. Supp. 2d 931, 934–36 (E.D. Wis. 2002); *see also Largan Precision Co, Ltd v. Genius Elec. Optical Co.*, 86 F. Supp. 3d 1105, 1109, 1114 (N.D. Cal. 2015) (finding patent infringement for "send[ing] a very small number of product samples directly into the United States" which were "free development samples not meant for sale"). Similarly, Meraki's direction for Promate to send samples and pricing information to a potential customer in this judicial district is sufficient to support the conclusion that Meraki purposefully directed its activities to residents in this forum.

The two cases that Meraki cites for its position that its importation of samples is not sufficient are readily distinguishable. In *Hildebrand v. Steck Mfg. Co., Inc.*, the defendant mailed multiple cease and desist letters to the plaintiff (who later filed a declaratory judgment action from which the appeal stems), where one letter included a sample set of tools that embodied the defendant's patent. 279 F.3d 1351, 1353 (Fed. Cir. 2002). The set of tools, however, was a prototype and was only intended to generate interest in the plaintiff to license the patent-at-issue. *Id.* at 1356. The Federal Circuit found that the defendant's contacts fell into the *Red Wing* exception (concerning jurisdiction for a declaratory judgment action) because all contacts were for the purposes of warning against infringement or negotiating a license. *Id.* Here, however, Meraki

(through Promate) imported its samples into the forum to solicit a potential customer, not warn against infringement, where the samples here were not prototypes, and where Meraki and Promate's communications included pricing information. Ex. A to Wong [sic] Decl.

Similarly, Meraki's reliance on the *Hascor* decision is misplaced. In *Hascor*, the *plaintiff*, not the defendant, placed the sample-at-issue into the stream of commerce, which the court found did not show that the *defendant* purposefully directed its activities toward Texas. 2013 WL 12183224, at *7. Unlike *Hascor*, MPS did not send any Meraki samples to Texas or direct Meraki to do so—Meraki itself directed its products into Texas at the request of a potential customer for which it was soliciting business. Such conduct mandates the conclusion that Meraki purposefully directed its activities to this forum in satisfaction of the first *Nuance* factor.

### 2. *Meraki Purposefully Places Its Products in the Stream of Commerce Knowing They Will Enter This Forum*

While Promate's importation of the Accused Products into Texas at Meraki's request and encouragement is sufficient to support a finding that Meraki purposefully directed its activities to residents in this forum, Meraki also placed its products in the stream of commerce with the expectation that its products would be sold in this forum. Meraki's customers include those with a large and well-established presence in the United States, such as Lenovo and Delta. Lenovo is one of the top-selling computer manufacturers in the United States, with the third highest sales in the U.S. in 2019. *See* Rick Smith, *Lenovo drives up marketshare in US, keeps No. 1 spot in global PC sales*, WRALTECHWIRE (Apr. 14, 2020), https://www.wraltechwire.com/2020/04/14/lenovo-drives-up-marketshare-in-us-keeps-no-1-spot-in-global-pc-sales/. Similarly, Delta's business in the United States was established at least 30 years ago and includes operations in multiple cities, including Austin. *See Business in the Americas*, DELTA, https://www.delta-americas.com/about/business_enUS.aspx?secID=5&pid=1&tid=0&hl=en-US. Given that Meraki

knowingly incorporates its products into the end products of companies with a large presence in the United States, there is *prima facie* evidence that Meraki knew or should have known that its products would end up in the second largest state, Texas.

As this Court has recognized, in a typical case a defendant continually sells its physical products, such as computer products, to a nationwide intermediary (or in the present case, a manufacturer that incorporates the defendant's product into its own), who then sells them to consumers. *Slyce Acquisition Inc. v. Syte - Visual Conception Ltd.*, 422 F. Supp. 3d 1191, 1203 (W.D. Tex. 2019). The defendant, in a typical case, will sell thousands or more products to these retailers (or here, an end-product manufacturer) who sell products nationwide. Meraki, therefore, should have known that by placing thousands of its products into the stream of commerce, some would make their way into the second largest state in the United States and be purchased by customers there. *Id.*; *see also Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994). Meraki does not deny that its products are also sold through online forums, such as Taobao, that sell to customers in the United States. MTD at 5–6. Meraki, therefore, satisfies Justice Brennan's articulation of the stream of commerce theory. *Slyce*, 422 F. Supp. 3d at 1203. Meraki also satisfies Justice O'Connor's articulation of the stream of commerce theory because Meraki intentionally sells its products to a variety of businesses. Wong [sic] Decl., ¶ 14. As discussed above, Meraki is attempting to undercut MPS's business by targeting manufacturers, such as Delta, with a large United States presence. FAC ¶¶ 28, 71. Meraki, therefore, has demonstrated that it specifically targets customers that include manufacturers with a large presence in the United States. *Slyce*, 422 F. Supp. 3d at 1204.

Meraki knows its products are incorporated into end products sold in this district by manufacturers such as Lenovo or Delta, or through online retailers, and therefore knew or should

have known that its products would be purchased by a customer in Texas. Further, Meraki has not cited to any evidence that it opted to limit the distribution of its products to exclude Texas despite what it knew or should have known—indeed, Meraki openly welcomed inquiries from customers in Texas. *Slyce*, 422 F. Supp. 3d at 1204. Meraki, therefore, purposefully directed its activities to residents in this forum by placing its products in the stream of commerce.

### 3. *Meraki's Actions Led to a Foreseeable Injury*

Meraki's actions such as placing its products into the stream of commerce and directing that its products be sent to a customer in this forum, establish that Meraki's actions led to a foreseeable injury to MPS in Texas. Meraki's argument to the contrary focuses solely on MPS's alleged trade secret allegations and ignores MPS's other causes of action, namely patent infringement that occurred in this judicial district. MTD at 7; FAC ¶ 27.

In fact, Meraki's own admissions demonstrate that its actions led to a foreseeable injury in Texas. As discussed above, Meraki's co-founders and employees had detailed knowledge of the Asserted Patents through their work at MPS. Meraki's co-founder and current employee, Mr. Dong, also states in his declaration that Meraki sells its power chip products in China, but that Meraki did direct samples of the Accused Products to Texas prior to this action being filed. Wong [sic] Decl. ¶¶ 14, 16. Given that Meraki's direct placement of the Accused Products in Texas appears to be outside of its typical operating procedure, Meraki knew or should have known that its actions of sending samples to a customer in Texas could result in infringement of MPS's patents, which Meraki had ample knowledge of. FAC ¶¶ 85–87; *N. Am. Philips Co. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1578–79 (Fed. Cir. 1994) (finding that the tort of patent infringement occurs wherever the defendant engages in infringing activity). And accepting Meraki's stream of commerce argument as valid—it is not—the only jurisdiction that offers MPS any legal redress for Meraki's infringement of the Asserted Patents is this judicial district.

#### 4. *Personal Jurisdiction over Meraki Would Be Reasonable and Fair*

The Supreme Court has found that cases where it is not fair or reasonable to exercise personal jurisdiction over a defendant are so rare that there must a "compelling case" of unreasonableness. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). And it is Meraki that must present this compelling case, not MPS. *Id.* ("On the other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."). Meraki has not met its burden to present such a compelling case here, nor could it, contrary to Meraki's legally unsupported assertions.

Texas has an interest in discouraging injuries that occur with the state—here Meraki's infringement of MPS's United States patents. *See Beverly Hills Fan*, 21 F.3d at 1568 (noting a state's interest in discouraging injuries that occur within the state). Further, the fact that Meraki's founders and documents are located in China is not dispositive. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (noting that progress in communications and transportation have made the defense of a lawsuit in a foreign tribunal less burdensome). Meraki's founders are U.S. citizens who formerly resided in the United States (and may still reside in the United States given both continue to own residences here) and their actions that led to MPS's injuries occurred in the United States. Courts have also taken multiple precautions during the COVID-19 pandemic to effectively litigate a matter, while ensuring that all involved are protected, such as the use of video conferencing platforms. The COVID-19 pandemic is also being corralled by multiple vaccines that were recently approved for use in the United States and are being rapidly deployed.

Finally, MPS would not be able to obtain effective relief for the causes of action asserted in this litigation in California or China. MPS's cause of action in California is separate and distinct from its cause of action here, with different and non-overlapping defendants and claims. MPS's

only claims of patent infringement and trade secret misappropriation are alleged against Meraki in this forum, where Meraki admits that it caused the importation of infringing products. Similarly, MPS would not be able to legally seek redress for Meraki's infringement of its United States patents in China. Meraki does not dispute that it imported products (via Promate) directly to this forum, so it is fair and reasonable for MPS to obtain redress against Meraki's conduct here. *See Burger King*, 471 U.S. at 477.

**B.      MPS's Claims Are Adequately Pled and Should Not Be Dismissed**

MPS's causes of action for patent infringement, trade secret misappropriation, tortious interference, and unfair competition are pled with sufficient particularity to survive a motion to dismiss. For the reasons below, Meraki's conclusory assertions to the contrary should be denied.

**1.      *MPS Sufficiently Pled Direct Infringement of the Asserted Patents***

This Court routinely denies motions to dismiss where defendants argue that a plaintiff has not met the *Twombly* and *Iqbal* standard for claims of direct patent infringement. For example, in *Parity Networks, LLC v. Cisco Sys. Inc.*, the defendant contended that the plaintiff's mere reference of the asserted claims but failure to map them to the accused products in any way rendered plaintiff's pleadings of infringement insufficient. Case No. 6:19-cv-207-ADA, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019). This Court rejected defendant's argument, found plaintiff's pleadings sufficient and noted that any deficiencies will necessarily be addressed when plaintiff serves its contentions. *Id.* The Court should similarly deny Meraki's motion to dismiss.

First, concerning the '790 patent, MPS specifically pled that Meraki's MK1808 "selectively latches off synchronous rectification based on the input voltage being the same as the gate voltage, as a turn-off blanking time is applied, during which the gate driver signal is latched off." FAC ¶ 93. Meraki appears to have ignored this paragraph of MPS's first amended complaint. Under this Court's precedent, MPS's claim of infringement of the '790 patent is sufficient. *Parity*

*Networks*, 2019 WL 3940952, at *2; *see also Cont'l Intermodal Grp. - Trucking LLC v. Sand Revolution LLC*, Case No. 7:18-cv-147, Dkt. 51, Slip Op. at 1 (W.D. Tex. Apr. 8, 2019) (finding plaintiff sufficiently pled its claim of infringement by alleging that components of the accused product track elements of exemplary claims of the patent-at-issue).

Second, concerning the '140 patent, MPS specifically pled that the MK1808 "has at least two comparators" (i.e., a second comparator), a first comparator "which compares a voltage threshold across the synchronous rectifier" (i.e., a first comparator with input terminals configured to receive a voltage across the synchronous rectifier) and "a pulse circuit receiving the output from the first comparator, and outputting a pulse signal, which pulses for a pre-set time period when the first comparator's output changes" (i.e., a pulse circuit that receives a comparison signal and provides a pulse signal based on the comparison signal flipping between voltage levels and maintaining a pre-set time period). FAC ¶¶ 104–8. MPS's allegations are, therefore, sufficient under this Court's precedent. *Parity Networks*, 2019 WL 3940952, at *2. To the extent the Court finds any alleged deficiencies with MPS's contentions—there are none—they will be addressed when MPS serves its infringement contentions. *Id.*

### 2. *MPS Sufficiently Pled Induced Infringement*

As with its direct infringement allegations, MPS has sufficiently pled allegations of induced infringement and the Court, therefore, should deny Meraki's motion. To adequately plead a claim of induced infringement, a plaintiff must demonstrate that the defendant knew of the patent, that the induced acts constitute infringement and a specific intent to induce infringement, which is the only element that Meraki appears to dispute. *Id.* MPS has sufficiently pled these elements.

First, MPS detailed that Meraki's founders, Mr. Dong and Ms. Sheng, knew of both Asserted Patents from their employment at MPS. FAC ¶¶ 85–87, 96, 110. Meraki has also touted that some of its products are pin-to-pin compatible with some of MPS's products, which are

covered by the Asserted Patents. MPS, therefore, adequately pled that Meraki had actual knowledge that it infringed the Asserted Patents. *Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*, Case No. W:13-cv-365, 2014 WL 2892285, at *3 (W.D. Tex. May 12, 2014) ("Proof of a defendant's actual knowledge of a patent infringement clearly demonstrates induced infringement."). Second, as discussed above, MPS adequately pled direct infringement of the Asserted Patents. Third, MPS pled that Meraki refers customers to its sales representatives, who then put customers in touch with Meraki's distributors so that a customer can acquire Meraki's products in the United States and thereby infringe the Asserted Patents. FAC ¶¶ 94, 108. In fact, Meraki's distributor Promate conceded it was induced by Meraki to import samples of the Accused products into the U.S. and this judicial district. Dkt. 20-1 ¶ 5. MPS, therefore, adequately pled that Meraki knowingly induced and intended its distributors to infringe the Asserted Patents.

### 3. *MPS Sufficiently Pled Contributory Infringement*

Similar to its allegations of inducement and direct infringement, MPS has sufficiently pled its allegations of contributory infringement and the Court, therefore, should deny Meraki's motion. To plead contributory infringement, a plaintiff must allege that (1) the defendant had knowledge of the patent; (2) the defendant sold products especially made for an infringing use; (3) the defendant had knowledge of the infringing use; (4) the products had no substantial non-infringing use; and (5) an underlying fact of direct infringement exists. *Parity Networks*, 2019 WL 3940952, at *2. As discussed above, MPS adequately pled direct infringement of the Asserted Patents.

MPS also pled facts showing that the Accused Products have no substantial non-infringing uses—the only other element that Meraki alleges is not pled. Specifically, MPS explicitly pled that the Accused Products have no substantial non-infringing uses because each of Meraki's synchronous rectifier products have no use outside of their combination with a charger or AC/DC power product. FAC ¶¶ 16, 95, 109. MPS's complaint also includes a discussion of synchronous

13

rectifier products and how they are used in a wide range of charging products that require conversion from AC to DC power or other products in an infringing manner. *See, e.g.*, *id.* ¶¶ 37, 38, 74. Accordingly, MPS has sufficiently pled contributory infringement.

### 4. *MPS Sufficiently Pled Willful Infringement*

Further, MPS has sufficiently pled willful infringement, including that Meraki had the knowledge and intent to infringe the Asserted Patents. Under this Court's precedent, if a plaintiff adequately alleges that the defendant knew of infringement prior to filing of the complaint, a plaintiff has pled sufficient facts to plausibly show that, after acquiring that knowledge the defendant knew or should have known that its conduct amounted to infringement. *Parity Networks*, 2019 WL 3940952, at *3. As explained above, MPS's complaint includes detailed allegations of Meraki's knowledge of the Asserted Patents through its founders' employment at MPS. FAC ¶¶ 85–87, 96, 110. These facts plausibly show that Meraki knew or should have known that its conduct amounted to infringement. *Parity Networks*, 2019 WL 3940952, at *3. This is especially true considering that Meraki has advertised the pin-to-pin compatibility of some of its products and MPS's products, which are protected by the Asserted Patents. Given this admitted similarity between the Accused Products and MPS's patent-protected products, MPS sufficiently pled that Meraki had the knowledge and intent that the Accused Products infringe the Asserted Patents.

### 5. *MPS Sufficiently Pled Misappropriation of Its Trade Secrets*

MPS has sufficiently pled that the information stolen by Meraki are MPS's trade secrets. To establish trade secret misappropriation in Texas, a plaintiff must show (1) the existence of a trade secret; (2) breach of a confidential relationship or improper discovery of the trade secret; (3) use of the trade secret; and (4) damages. *BidPrime, LLC v. SmartProcure, Inc.*, Case No. 1:18-cv-478-RP, 2018 WL 8223430, at *2 (W.D. Tex. June 18, 2018). In Texas, "[a] trade secret is any formula, pattern, device or compilation of information which is used in one's business and presents

an opportunity to obtain an advantage over competitors who do not know or use it." *Grand Time Corp. v. Watch Factory, Inc.*, Case No. 3:08-cv-1770-K, 2010 WL 92319, at *4 (N.D. Tex. Jan. 6, 2010).

MPS has adequately pled that its trade secrets are in fact secret. First, Texas recognizes that customer lists, pricing information, customer preferences, marketing strategies, and other similar documents are trade secrets. *Id.* MPS's customer list is not merely just the names of its current customers as Meraki disingenuously asserts, but instead includes other information such as marketing information, a customer's priority for receiving products, customer preferences, customer contacts, and other recognized trade secret information. *IKON Office Solutions, Inc. v. Furnish*, Case No. SA-06-CA-434-FB, 2007 WL 9702530, at *2 (W.D. Tex. Oct. 31, 2007). The fact that MPS's customer list includes the names of customers, not all of which MPS has publicly disclosed, is irrelevant. Courts in this district recognize that the combination of public information with private information can be a trade secret if the owner takes reasonable measures to keep the information secret. *BidPrime*, 2018 WL 8223430, at *2. MPS, therefore, has adequately pled that its customer list is a trade secret.

Second, MPS adequately pled that its pricing information is secret. Again, Mr. Dong and Ms. Sheng both acknowledged that MPS's pricing information constituted confidential information. *See, e.g.*, Dong NDA ¶ 1.1. Further, the cases that Meraki appears to rely on do not support that MPS must establish that its customers are bound to maintain pricing information as trade secrets at the pleading stage. In *Miner, Ltd. v. Anguiano*, the court was considering whether an employment agreement was enforceable, not whether a plaintiff sufficiently pled that its pricing information was a trade secret. 383 F. Supp. 3d 682, 698 (W.D. Tex. 2019). Similarly, in *DeSantis v. Wackenhut Corp.*, the court considered whether an employer's noncompetition agreement was

enforceable, not whether a plaintiff sufficiently pled that its pricing information was a trade secret. 793 S.W.2d 670, 684 (Tex. 1990). And other Texas courts have not found that a plaintiff is required to plead that its pricing information was protected by a confidentiality agreement with its customers. *See, e.g.*, *Suncoast Post-Tension, Ltd. v. Scoppa*, Case No. 4:13-cv-3125, 2014 WL 12596471, at *5 (S.D. Tex. May 13, 2014).

Third, MPS sufficiently alleges that its highly confidential design data, layout data, and plot data was not generally known to the public or readily ascertainable by proper means. FAC ¶¶ 8, 11, 39–42. Similar to normal companies, MPS has a robust intellectual patent portfolio that includes both patents and trade secrets. Contrary to Meraki's unsupported assertion, it is well-recognized that publication of certain patents does not render a company's trade secret information public. *See, e.g.*, *Wyeth v. Nat. Biologics, Inc.*, Case No. Civ. 98-2469, 2003 WL 22282371, at *2 (D. Minn. Oct. 2, 2003) (finding that plaintiff's trade secret method was not known or readily ascertainable even though plaintiff had related patents).

Further, MPS did not admit that its products that were released to market cannot have trade secret designs or other trade secrets. As MPS discusses, the components and layout described in one of Meraki's patent applications was substantially the same as an unreleased MPS product, the MP6930, meaning that *all* information about the product was maintained by MPS as trade secrets. FAC ¶ 84.[3] That does not, however, mean that if MPS releases a product, it can have *no* trade secret information associated with that product as Meraki disingenuously asserts. Meraki cites no authority to support this nonsensical position. Finally, whether or not Meraki could or did reverse engineer MPS's products is not a sufficient basis to dismiss MPS's trade secret allegations at this

---

[3] Notably, Meraki does not deny that the information disclosed in its patent application was illegally obtained from MPS. MTD at 15.

stage. *See Alpha Pro Tech, Inc. v. VWR Int'l LLC*, 984 F. Supp. 2d 425, 435–36 (E.D. Penn. 2013) (finding that, viewing facts most favorable to plaintiff, it met the pleading standard for its trade secret claims); *DPT Labs., Ltd. v. Bath & Body Works, Inc.*, 1999 WL 33289709, at *5 (W.D. Tex. Dec. 20, 1999) (noting that trade secret holder is not deprived of protection from misappropriation simply because trade secrets can be discovered by other fair and lawful means).

MPS also sufficiently pled that Meraki founders, Mr. Dong and Ms. Sheng, misappropriated MPS's trade secrets, something Meraki does not deny. MPS does not allege that Mr. Dong and Ms. Sheng misappropriated MPS's trade secret information only by accessing confidential files during their employment. MPS, instead, clearly articulates that Mr. Dong and Ms. Sheng both connected external storage devices to their laptops and copied confidential files to those external devices, and then lied about doing so. FAC ¶¶ 62–65. MPS further clearly alleges that Mr. Dong and Ms. Sheng used this confidential information *after their employment was terminated* to form Meraki to compete with MPS through improper means—namely the use of MPS's confidential information to develop nearly identical products on an expedited and unrealistic timeline absent these nefarious activities, as well as target MPS's customers and undercut MPS's pricing scheme through at least Mr. Dong and Ms. Sheng's use of MPS's confidential customer lists and pricing information as founders and employees of Meraki. *See, e.g.*, *id.* ¶¶ 72–84. Unlike the single case that Meraki relies on to support its incorrect position, MPS is not relying only on the similarity of its and Meraki's products, but the fact that Meraki is using stolen trade secrets in its development of competitive copycat products. *Id.* ¶¶ 72–84, 115–33; *see Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 601–2 (5th Cir. 2015) (rejecting plaintiff's argument because it only relies on a coincidence of timing and that defendant's product performs the same general function as its product). MPS is also relying on Meraki's extremely shortened

timeline for entry into the market for a substantially similar product (which begs the conclusion that Meraki used MPS's trade secrets to shorten its development timeline), as well as a forensic report that Mr. Dong and Ms. Sheng accessed MPS trade secrets and confidential information directly related to the very technology at issue here. MPS's trade secret claims, therefore, are appropriately pled as a matter of law—Meraki fails to cite a single case that holds otherwise.

### 6. *MPS's Claims for Tortious Interference and Unfair Competition Are Not Preempted*

MPS's common law claims for tortious interference and unfair competition are not preempted by MPS's claim for trade secret misappropriation. While the TUTSA does provide that some common law claims, such as a breach of fiduciary duty, might be preempted, Meraki cites no authority that unfair competition and tortious interference must be preempted. *See Embarcadero Techs., Inc. v. Redgate Software, Inc.*, Case No. 1:17-cv-444-RP, 2018 WL 315753, at *2–3 (W.D. Tex. Jan. 5, 2018) (breach of fiduciary duty claims); *DHI Grp., Inc. v. Kent*, 397 F. Supp. 3d 904, 922 (S.D. Tex. 2019) (TTLA, THACA, and breach of fiduciary duty claims). In fact, one case cited by Meraki finds the opposite. In *360 Mortg. Grp. LLC v. Homebridge Fin. Servs., Inc.*, the court found that the TUTSA does not affect contractual remedies, such as tortious interference whether or not those causes of action are based on misappropriation because they depend on the content of a written agreement. Case No. A-14-CA-847-SS, 2016 WL 900577, at *7 (W.D. Tex. Mar. 2, 2016) (relying on TEX. CIV. PRAC. & REM. CODE § 134A.007).

Further, MPS's unfair competition claim is not preempted by its TUTSA claim because it is an alternate theory of relief and relies on Meraki's exploitation of MPS's confidential information generally, and not merely trade secret information. FAC ¶¶ 154–56 (discussing MPS's confidential *and* proprietary information and Meraki's improper exploitation of both). This case is still in its infancy and given the length of time, the scope, and the surreptitious nature of Meraki's

activities, MPS has not had the opportunity to establish the full extent of Meraki's misappropriation, but it is very likely that both MPS's trade secret and proprietary information has been stolen by Meraki. Texas courts have similarly recognized this distinction between a claim of misappropriation and unfair competition, especially at this stage of the litigation. *DHI Grp.*, 397 F. Supp. 3d at 923 (finding that defendant's preemption argument should be denied at the summary judgment stage because neither party has established the trade secret status of the information at issue). In *AMID, Inc. v. Medic Alert Found. U.S., Inc.* for example, the court denied defendant's motion to dismiss plaintiff's unfair competition claim as preempted because plaintiff similarly pled an alternate form of relief (unfair competition) that was based on defendant's misappropriation of confidential, not just trade secret, information. 241 F. Supp.3d 788, 825–27 (S.D. Tex. 2017). The defendant in *AMID* denied that the information at issue was a trade secret, as Meraki does here, but the court found that the plaintiff could still recover on its unfair competition claim without proving that the information is protected as trade secrets. *Id.* A similar conclusion should result here and MPS's alternate form of relief should not be dismissed.

### 7. MPS's Trade Secret, Tortious Interference, and Unfair Competition Claims Do Not Fall Under the Forum Selection Clause of Its Confidentiality Agreement

The presence of a forum selection clause ("FSC") in the employment agreements of Mr. Dong and Ms. Sheng does not mandate dismissal of MPS's trade secret misappropriation, tortious interference, and unfair competition claims. The FSC that Meraki attempts to rely on here is contained within the private contracts between MPS and Mr. Dong and MPS and Ms. Sheng, who are not even parties in this matter. It does not govern any relationship between MPS or Meraki, which was not even in existence at the time each respective employment agreement was signed. *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993) (typically a provision in a contract "may not be invoked by one who is not a party to the agreement"); *Rollins v. Maui Dreams Dive*

*Co.*, 2010 WL 4386755, at *11 (D. Haw. Oct. 29, 2010) (holding a forum selection clause is irrelevant to a contract defendant was not a party to). MPS abided by this forum selection clause when it filed suit in the Northern District of California against Mr. Dong and Ms. Sheng for breach of contract.

Further, the forum selection clause is irrelevant to MPS's claims against Meraki. In this matter, MPS's allegations of trade secret misappropriation and unfair competition are alleged against Meraki, and not Mr. Dong or Ms. Sheng as individuals. FAC ¶¶ 72–84. In addition to Mr. Dong and Ms. Sheng, other individuals at Meraki have contributed to Meraki's misconduct, such as Meraki's sales employees who induced Promate to import the Accused Products into the U.S. and this judicial district. Dkt. 22-2. As MPS alleges, current evidence suggests that Meraki was expressly founded to exploit and profit from use of MPS's highly confidential information, including negative know-how, to significantly shorten its entry into the market, target MPS's customers, and undercut MPS's pricing. *Id.* The FSC to which Meraki is not a party, therefore, does not govern MPS's claims against Meraki.

## V.    CONCLUSION

For the reasons explained herein, Meraki's motion to dismiss should be denied in its entirety. In the alternative, MPS respectfully requests leave to amend its complaint to address the issues raised by Meraki in its Motion.

Dated: January 12, 2021                    **PERKINS COIE LLP**

                                    By: */s/ John P. Schnurer*_____
                                           John P. Schnurer (Texas Bar No. 24072628)
                                           Jschnurer@perkinscoie.com
                                           John D. Esterhay (California Bar No. 282330)
                                           Admitted to Practice in Western District of
                                           Texas on October 29, 2020
                                           Jesterhay@perkinscoie.com
                                           11452 El Camino Real, Suite 300
                                           San Diego, CA 92130-2080
                                           Telephone: (858) 720-5758
                                           Facsimile: (858) 720-5799

                                           Janice L. Ta (Texas Bar No. 24075138)
                                           Jta@perkinscoie.com
                                           500 W 2nd Street, Suite 1900
                                           Austin, TX 78701
                                           Telephone: (737) 256-6125
                                           Facsimile: (737) 256-6300

                                    **ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served via email on January 12, 2021, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(b).

                                           */s/ John P. Schnurer*_____