IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **MONOLITHIC POWER SYSTEMS, INC. AND CHENGDU MONOLITHIC POWER SYSTEMS CO., LTD.,** | § § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CIVIL NO. 6:20-CV-008876-ADA |
| **MERAKI INTEGRATED CIRCUIT (SHENZHEN) TECHNOLOGY, LTD. AND PROMATE ELECTRONIC CO., LTD.,** | § § § § § § | |
| *Defendants.* | § | |

## ORDER DENYING IN-PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

Came on for consideration this date is Defendant Meraki Integrated Circuit (Shenzhen) Technology, LTD.'s ("Meraki") Motion to Dismiss Claims I through VI (against Meraki) from the First Amended Complaint for lack of personal jurisdiction under Rule 12(b)(2), for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for preemption of Claims V and VI (tortious inference and unfair competition) under the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem Code Ann. § 134A.007. Def.'s Mot., ECF No. 22. Meraki further moved to dismiss Claims III–VI, citing a forum selection clause in the Confidentiality Agreements between MPS and Meraki's founders. *Id.* The Motion was filed on December 29, 2020. *Id.*

Plaintiffs Monolithic Power Systems and Chengdu Monolithic Power Systems (together, "MPS") filed their Response on January 12, 2021. Pls.' Resp., ECF No. 28. Meraki filed its Reply on January 19, 2021. Def.'s Reply, ECF No. 29. After careful consideration of the Motion, the

1

Parties' briefs, and the applicable law, the Court **DENIES** Defendant Meraki's Motion to Dismiss in part, but **GRANTS WITHOUT PREJUDICE** the Motion to Dismiss claims of willful, induced, and contributory infringement.

## I.   BACKGROUND

MPS filed this lawsuit on September 25, 2020, alleging patent infringement, trade secret misappropriation, tortious interference, and unfair competition. ECF No. 1. Meraki is a Chinese company located in Shenzhen that sells power chip products in China. Def.'s Mot. at 1–2. Meraki has no offices, employees, agents, or business in Texas. *Id.* Its co-founders Mr. Wei (Wayne) Dong and Ms. Lin (Elaine) Sheng previously worked for MPS before starting Meraki. Pls.' Resp. at 1. Mr. Dong, relocated to China in March 2017 and Ms. Sheng moved to China in July 2017, and started working at Meraki in January 2018 as its Chief Technology Officer. *Id.* at 3.

MPS alleges that Meraki infringed upon U.S. Patent Nos. 8,400,790 ("the '790 Patent") and 10,432,104 ("the '104 Patent"). First Am. Compl., ECF No. 21. According to MPS, these patents generally relate to the field of synchronous rectification. *Id.* at ¶¶ 15–16. MPS alleges that the Mr. Dong and Ms. Sheng stole trade secrets while employed by MPS, and used those trade secrets to establish a competing corporation, Meraki. *See generally, id.* at ¶¶ 3–18. Meraki now files the instant Motion arguing the Court lacks personal jurisdiction over it and that MPS has not properly alleged its claims in a way that survives a Rule 12(b)(6) Motion to Dismiss. *See, generally*, Def.'s Mot.

## II.   LEGAL STANDARD

**A. Personal jurisdiction via a directed activity toward the forum**

Because Texas's long-arm statute reaches to the limits of the Federal Constitution, the only question to assess is whether exercising personal jurisdiction offends due process. *Hascore USA,*

*Inc. v. N. Am. Hoganas, Inc.*, Case No. SA-13-CA-466-OLG, 2013 WL 12183224, at *2 (W.D. Tex., Aug. 23, 2013). In the patent context, courts determining whether specific jurisdiction exists use the Federal Circuit's test and consider whether: (1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Nuance Comm's, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010).

**B. Personal jurisdiction under a stream-of-commerce theory**

The stream-of-commerce doctrine "recognizes that a defendant may purposefully avail itself of the protection of a state's laws—and thereby [ ] subject itself to personal jurisdiction—by sending its goods rather than its agents into the forum." *In re: Depuy Orthopaedics, Inc.*, 888 F.3d at 753. Under Fifth Circuit law, sufficient minimum contacts exist so long as "the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (quoting *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987)). In other words, "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." *Id.* (quoting *Luv N' care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006)); *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993).

Even so, it is important that "[t]he defendant's contacts [with the forum state] must be more than 'random, fortuitous, or attenuated, or [the result] of the unilateral activity of another party or third person.'" *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012). Finally, this Court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in

3

the affidavits, in favor of jurisdiction. *Luv N' care, Ltd.*, 438 F.3d at 469 (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).

### C. Motion to Dismiss under Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the nonmovant. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a court need not blindly accept each and every allegation of fact; properly pleaded allegations of fact amount to more than just conclusory allegations or legal conclusions "masquerading as factual conclusions." *Taylor v. Books A. Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 56 U.S. 652, 678 (2009).

To survive the motion to dismiss, a nonmovant must plead enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570. The court determines whether the plaintiff has stated both a legally cognizable and plausible claim; the court should not evaluate the plaintiff's likelihood of success. *Lone Star Fund V. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Based upon the assumption that all the allegations in the complaint are true, the factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

### III.  ANALYSIS

### A. This Court's exercise of personal jurisdiction over Meraki is proper

In its Motion, Meraki argues that its single contact in Texas, an independent distributor's provision of free product samples in response to a "MPS-related" entity, does not create a constitutionally adequate basis for personal jurisdiction. Def.'s Mot. at 1. Meraki asserts that it "designs, makes, and sells its power chip products *in China* and has never purposefully sold

products to any customer based in the United States—let alone Texas—nor has it intended or encouraged its power chip products to arrive at a location within Texas." *Id.* at 5. It further claims that when selling its power chips in China, "Meraki generally has no knowledge about where its customers eventually sell their final products that integrate [its] power chips." *Id.* Meraki finally argues asserting personal jurisdiction would be unreasonable because subjecting a foreign company to United States law would impose a heavy burden and, in light of regional COVID-19 cases, "would make it even more burdensome for Meraki to defend itself in this forum." *Id.* at 8–9.

In Response, MPS argues specific jurisdiction exists because Meraki has the requisite minimum contacts in this forum and exercising jurisdiction would be fair and reasonable. Pls.' Resp. at 4. MPS claims that Meraki's activities were purposefully directed to this forum because Meraki instructed one of its distributors, Promate, to import a sample of the Accused Products to a potential customer, Sawblade, in Austin. *Id.* MPS acknowledges these products were not sold but stresses that Meraki imported and offered for sale the Accused Products in this forum. *Id.* at 5. MPS argues that there is no *de minimis* exception to personal jurisdiction and that the "importation or sale of a single infringing product is enough to confer personal jurisdiction over the defendant." *Id.*

MPS also advances a stream-of-commerce theory of personal jurisdiction. *Id.* at 7. Because Meraki's customers in the United States (Lenovo and Delta) have a well-established and sizeable presence, MPS argues that is sufficient to support *prima facie* showing that Meraki knew or should have known that the Accused Products would end up in the second largest state in the country, Texas. *Id.* at 7–8. Lastly, MPS argues that asserting personal jurisdiction over Meraki would be fair and reasonable because Texas has an interest in discouraging injuries that occur in the state

(here, the alleged infringement). *Id.* at 10. As to the concerns surrounding the COVID-19 pandemic, MPS asserts there are many precautions that can be taken to mitigate the risks and safely litigate the case in this forum. *Id.*

The Court must first determine if Meraki purposefully directed its activities at residents in this forum. *Nuance Comm's, Inc*, 626 F.3d at 1231. The Court finds that it has. As MPS points out in its briefing, myriad cases exist of courts asserting personal jurisdiction over defendants who have relatively minuscule but still directed activities directed towards a forum. *See, e.g., Moore v. Harney Hardware, Inc.*, 2006 WL 1342820, at *2–3 (S.D. Tex. May 15, 2006); *Caddy Prods., Inc. v. Greystone Int'l, Inc.*, 2005 WL 3216689, at *2 (D. Minn. Nov. 29, 2005); *Osteotech, Inc. v. GenSci Regeneration Scis., Inc.*, 6 F. Supp. 2d 349, 354 (D.N.J. 1998); *Aero Indus., Inc. v. DeMonte Fabricating, Ltd.*, 396 F. Supp. 2d 961, 966–69 (S.D. Ind. 2005); *Crystal Semiconductor Corp. v. OPTI Inc.*, 1997 WL 798357, at *3–5 (W.D. Tex. July 14, 1997). The Court finds that sending a sample of the Accused Products into this forum for the purpose of eliciting business contacts is directed conduct sufficient to support personal jurisdiction in this forum.

Alternatively, the Court also finds that Meraki is subject to this Court's jurisdiction under a stream-of-commerce approach. As stated, under Fifth Circuit law, sufficient minimum contacts exist so long as "the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Ainsworth*, 716 F.3d 174, 177 (5th Cir. 2013). This is true if the defendant knew or should have known its products would have reached the forum state via the stream of commerce. *See Luv N' care*, 438 F.3d at 465. MPS alleges that Meraki's customers in the United States (Lenovo and Delta) have a well-established and sizeable presence. Pl.'s Resp. at 7–8. By entering into business with these companies, which have expansive and nationwide product distribution networks, *see id.*, Meraki

cannot suggest that it is unaware or should not have known that goods incorporating its products are found in the nation's second largest state. Furthermore, Meraki in its Motion concedes that it places its product into the stream of commerce and that it knew it reached the state of Texas. *See* Def.'s Mot. at 6–7 ("Apparently, Promate Shenzhen (a Chinese subsidiary of Promate)—an unrelated third-party— made a one-time shipment of free product samples to Texas in response to a pre-textual order placed by "Sawblade Ventures, LLC" one month before this suit was commenced. Promate Shenzhen's one-time placement of Meraki's product samples into the forum state [does not form a basis for personal jurisdiction]." (citations omitted)). Whether or not Meraki directly sold the product in this forum, or it arrived via the stream of commerce, this Court can properly assert jurisdiction over Meraki.

The Court must next determine if "the claim arises out of or relates to those activities" and if "the assertion of personal jurisdiction is reasonable and fair." *Nuance Comm's, Inc.*, 626 F.3d at 1231. The Court finds that both are satisfied. Regarding if the infringement claim arises or relates to the importation of the Accused Products into this forum, it is clear the two are related. By importing its allegedly infringing products through the stream of commerce into this forum, Meraki has injured MPS in this forum. It is also clear that this forum has in interest in adjudicating injuries that occur within this state. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994).

As to the concerns regarding COVID-19, this Court has made several accommodations in light of the pandemic. This Court is cognizant of the realities this pandemic has brought around the world. To the extent any parties have concerns regarding the COVID-19 pandemic, the Court permits persons to appear at "hearing[s], deposition[s], mediation[s], or trial[s] . . . by teleconference, videoconference, or other method." Standing Order Regarding Coronavirus

(COVID-19) and Court Proceedings (Mar. 12, 2020). As the circumstance surrounding the pandemic continue to fluctuate, this Court is willing and able to work with the parties should other concerns arise over the course of litigation.

In summary, the Court finds that Meraki has directed activity into the forum, and alternatively, has placed its products into the stream of commerce in a manner that supports this Court's assertion of personal jurisdiction over it. Further, the claims at issue relate to Meraki's contacts with this forum and exercising personal jurisdiction over Meraki is fair and reasonable.

**B. MPS sufficiently pled Claims I–II to survive a Motion to Dismiss, but MPS failed to sufficiently plead willful infringement.**

In its Motion, Meraki argues that MPS's claims of direct, induced, contributory, and willful patent infringement are incorrectly pled and should be dismissed. Def.'s Mot. at 9. The Court finds that MPS has sufficiently pled claims of direct infringement. However, the Court also finds that MPS failed to sufficiently plead claims of induced, contributory, and willful infringement. Meraki's arguments for dismissal of direct, induced, contributory, and willful infringement are addressed below.

Meraki contends that MPS's claims of direct inducement should be dismissed because they did not "recite the exact or nearly identical language of the asserted patent claim elements to show infringement." *Id.* at 10. However, the standard for dismissal under Rule 12(b)(6) is only whether "the plaintiff has stated a legally cognizable claim that is plausible" and "whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." *Lone Star*, 594 F.3d at 387. MPS has claimed for both the '790 patent and the '140 patent sufficient facts that, taken as true, relief is plausible on its face. *See Twombly*, 550 U.S. at 570. Much like this Court's ruling in *Parity Networks*, "the Court finds that Plaintiff's pleadings are sufficient and that any deficiencies will necessarily be addressed when Plaintiff

8

serves its infringement contentions as is required. *Parity Networks, LLC v. Cisco Sys., Inc.,* 6:19-CV-00207-ADA, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019). Meraki's request for dismissal of MPS's direct infringement claims is **DENIED**.

Next, Merkari argues that MPS' induced and contributory infringement claims fail because the claims of direct infringement fail. Def.'s Mot. at 11; *see In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F. 3d 1323, 1333 (Fed. Cir. 2012) ("There can be no inducement or contributory infringement without an underlying act of direct infringement."). This contention fails because, as stated above, the Court does not dismiss MPS's direct infringement claims.

Nonetheless, to adequately plead a claim of induced infringement, a plaintiff must demonstrate that "the defendant knew of the patent and that the induced acts constitute patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.,* 135 S. Ct. 1920, 1926 (2015) (internal quotation marks omitted). Further, a plaintiff must allege a specific intent to induce infringement, which is "evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). Here, MPS has pled induced infringement by alleging facts surrounding Meraki's founder's knowledge of the asserted patents from their prior employment at MPS. FAC ¶¶ 85–87, 96, 110. However, this prior knowledge of the asserted technology does not advance a plausible inference of induced infringement. As stated in *DSU,* there must be facts alleging a specific intent to induce the direct infringer, and MPS's First Amended Complaint does not satisfy that requirement. *See DSU*, 471 F.3d 1306. Therefore, Merkari's request for dismissal of induced infringement claims is **GRANTED**.

A complaint only satisfies the elements of contributory infringement by alleging that: (1) defendant had knowledge of the patent; (2) defendant sold products especially made for infringing

9

use; (3) defendant had knowledge of the infringing use; (4) the products had no substantial noninfringing use; and (5) there exists an underlying act of direct infringement. *Netgear, Inc. v. Ruckus Wireless, Inc.*, 852 F. Supp. 2d 470, 476-77 (D. Del. 2012). While MPS's First Amended Complaint, as discussed above, does contain allegations of Meraki's knowledge of the asserted patents, the "no substantial noninfringing use" element is not met. MPS argues that the Complaint does contain allegations that the products have no substantial noninfringing use, citing FAC ¶¶ 16, 95, 109. However, these sections are misquoted, and they do not contain any facts, other than mere recitations of the elements, enough to lead to a plausible inference of any substantial non-infringing use. Therefore, Meraki's motion to dismiss claims of contributory infringement is **GRANTED**.

Finally, Meraki moves to dismiss MPS's claims of willful infringement. Def.'s Mot. at 12. To state a claim for willful infringement, "a plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Valinge Innovation AB v. Halstead New England Corp.*, No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018). Here, MPS has not sufficiently alleged that Meraki knew or should have known it's conduct amounted to infringement. MPS's contends that Meraki's founder's knowledge of the asserted patents leads to a plausible inference that they knew their conduct amounted to infringement. However, these are distinct elements, and without more factual allegations supporting knowledge of infringement, the pleading standard is not met. Therefore, the Court **GRANTS** the motion to dismiss claims of willful infringement **WITHOUT PREJUDICE**. However, the Court **ORDERS** that Plaintiff be allowed to take discovery related to the induced, contributory, and willful inducement claims when discovery opens.

**C. MPS has sufficiently pled Claims III–IV to survive a Motion to Dismiss**

Meraki argues that MPS's trade secret claims should be dismissed because the asserted trade secrets are not actually secret, and that MPS did not sufficiently plead misappropriation. Def.'s Mot. at 22. To establish trade secret misappropriation in Texas, a plaintiff must show "(a) the existence of a trade secret; (b) a breach of a confidential relationship or improper discovery of the trade secret; (c) use of the trade secret; and (d) damages." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 583 (5th Cir. 2013). The Texas Uniform Trade Secret statute mirrors the federal statute. *See* 18 U.S.C. § 1836(b)(1); Tex. Civ. Prac. & Rem. Code Ann. § 134A.002; *Wellogix, Inc. v. Accenture*, L.L.P., 716 F.3d 867, 874 (5th Cir. 2013).

First, Meraki argues that MPS failed to sufficiently allege that its trade secrets are in fact secret. Merkari contends that "MPS makes vague and unspecified allegations that its trade secrets consist of 'highly confidential design data, layout data, and plot data' and 'confidential customer lists and pricing information.'" Def.'s Mot. at 21. MPS's customer lists can be considered trade secrets, even if MPS's has disclosed some of the names on those lists publicly because the lists could contain other secret information that qualifies the lists as trade secrets. *See BidPrime, LLC v. SmartProcure, Inc.*, Case No. 1:18-cv- 478-RP, 2018 WL 8223430, at *2 (W.D. Tex. June 18, 2018) (citations omitted) ("Although public information cannot be a trade secret, a combination of public information can, in certain circumstances, be a trade secret. However, to qualify as a trade secret, the owner of that combination of information must take "reasonable measures under the circumstances to keep the information secret.*"*). Therefore, MPS has sufficiently pled its customer lists are trade secrets.

Next, Meraki contends that MPS's pricing information is not a trade secret because "MPS has not alleged facts establishing that its customers are bound to maintain the pricing information

as trade secrets." Def.'s Mot. at 21. However, MPS's burden at this stage is only to plead that the pricing information is plausibly secret on the face of the complaint. Other courts in Texas have found that plaintiffs need not plead that pricing information given to customers is bound by confidentiality. *See Suncoast Post-Tension, Ltd. v. Scoppa*, Case No. 4:13-cv-3125, 2014 WL 12596471, at *5 (S.D. Tex. May 13, 2014). At this early stage, the Court agrees and finds that MPS has sufficiently pled that its pricing information is a trade secret.

Meraki also argues that MPS's claim should be dismissed because it did not allege "the 'highly confidential design data, layout data, and plot data' for its products was not generally known to the public or readily ascertainable by proper means." Def.'s Mot. at 20. The basis for this argument is that some of this data is included in MPS's patents. *Id.* The Court is also unpersuaded by Meraki's "reverse engineering" arguments concerning this information, especially as grounds for a claim's dismissal. Thus, viewing the facts in a light most favorable to the plaintiff, the Court holds that MPS's trade secret claims on this information meets the standard of plausibility, and Meraki's motion on this ground is **DENIED**

Finally, Meraki contends that MPS's trade secrets claims should be dismissed because MPS failed to sufficiently allege plausible facts concerning misappropriation of those secrets. *Id.* at 21. Misappropriation requires a showing of the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;" or "disclosure or use of a trade secret of another without express or implied consent. . . ." 18 U.S.C. § 1839(5); Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(3). MPS's allegations satisfy those pleading requirements with respect to misappropriation. Specifically, MPS alleges that "Mr. Dong and Ms. Sheng both connected external storage devices to their laptops and copied confidential files to those external devices, and then lied about doing so." ECF No. 28, p. 23. Then, MPS alleges

that Meraki used this information for their own advantage by accelerating development timelines. *Id.* Therefore, the Court holds that Meraki's motion to dismiss claims III-IV is **DENIED**.

**D. MPS's Claims V-VI are not preempted**

Meraki argues that MPS's common law claims of tortious interference and unfair competition are preempted because of Texas Uniform Trade Secrets Act ("TUTSA") claims already discussed. Meraki cites *360 Mortgage Group, LLC v. Homebridge Fin. Servs., Inc.*, No. A-14-CA-847-SS, 2016 WL 900577, at *8 (W.D. Tex. March 2, 2016) to show that other courts have found that such common law claims are preempted by TUTSA. Def.'s Mot. at 23. However, that court found the opposite, stating that "A claim is not preempted if the plaintiff is able to show the claim is based on facts unrelated to the misappropriation of the trade secret." *Mortgage Group*, at *6. Indeed, the court in that case allowed the tortious interference claims at issue to survive a motion for summary judgment. *Id.*

Other courts have recognized that some common law claims may be preempted by the statute in order to "'prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret.'" *DHI Group, Inc. v. Kent*, 397 F. Supp. 3d 904, 923 (S.D. Tex. 2019) (citation omitted). In *DHI*, the court declined to find preemption because, at the summary judgement stage, the status of the information at issue was not yet categorized as secret. *Id.* In this instant case, the situation is similar. Therefore, the Court will not hold, at this early stage in the case, that MPS's claims are preempted by TUTSA. Meraki's motion to dismiss these claims is **DENIED**.

**E. Claims III-VI are not covered by the forum-selection clause in MPS's Confidentiality Agreements**

In its Motion, Meraki argues that the forum-selection clause in the Confidential Information and Invention Agreements between MPS and Mr. Dong and Ms. Sheng require dismissing Claims III-VI because the clause provides that "'the federal and state courts located in Santa Clara County, California shall have exclusive jurisdiction' over any disputes." Def.'s Mot. at 18–19 (citations omitted). Meraki also relies on the portions of the Agreements requiring the parties to "to hold in strictest confidence, and not to use, reproduce or copy . . . any Confidential Information of the Corporation" and "not to keep, access, transmit, store, transfer, email, or otherwise maintain any Confidential Information of the Corporation on any system, device, storage media, computer, or server" for its contentions that the language of the agreement compels dismissal of Claims III-VI. *Id.* at 19 (citations omitted).

Meraki argues Claims III and IV are disposed of because MPS's allegation includes the statement that Mr. Dong and Ms. Sheng "violated their agreements with MPS" and as such, the Claim necessarily implicates the restrictions of the Agreements. *See id.* Meraki also believes the allegation in Claims V and VI implicate the Agreements because the Claim language about how Mr. Dong and Ms. Sheng "interfered with MPS's business expectancy with its current and potential customers, by theft of MPS's highly confidential design data, layout data, plot data" and "theft of MPS's highly confidential customer and pricing information" also implicate the restrictions in the Agreements. *Id.*

MPS rebuts by arguing that the private contracts among MPS and Mr. Dong and Ms. Sheng are not relevant because the two are not parties in this litigation. Pls.' Resp. at 19 ("[The Agreements do] not govern any relationship between MPS or Meraki, which was not even in existence at the time each respective employment agreement was signed."). MPS further notes its

compliance with forum-selection clause when it filed suit against Mr. Dong and Ms. Sheng for breach of contract in the Northern District of California. *Id*.

The Courts finds that Claims III-VI do not fall within the scope of the forum-selection clause because the parties in this litigation are not the parties bound by the clause. This suit is brought against Meraki, not Mr. Dong nor Ms. Sheng in their individual capacities. *Id.* When litigation was brought against Mr. Dong and Ms. Sheng as individuals, the suit was properly brought in the Northern District of California. The terms of the Agreements do not bind parties not named in the Agreements. *See Rollins v. Maui Dreams Dive Co.*, 2010 WL 4386755, at *11 (D. Haw. Oct. 29, 2010). As such, the Court finds Claims III-VI do not warrant dismissal on this ground. Therefore, the Motion is **DENIED**.

### IV.   CONCLUSION

After reviewing the record, arguments, and applicable law before it, the Court finds that Meraki has not met its burden in showing personal jurisdiction is improper or that any of the Claims asserted against it must be dismissed. Therefore, the Court **DENIES** Defendant's Motion to Dismiss in part, but also **GRANTS** in part the Motion to Dismiss claims of willful, induced, and contributory infringement **WITHOUT PREJUDICE**.

**SIGNED this 1st day of September 2021**

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE