IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| MONOLITHIC POWER SYSTEMS, INC. and CHENGDU MONOLITHIC POWER SYSTEMS CO., LTD.,<br><br>**Plaintiffs,**<br><br>*v.*<br><br>MERAKI INTEGRATED CIRCUIT (SHENZHEN) TECHNOLOGY, LTD. and PROMATE ELECTRONIC CO., LTD.,<br>**Defendants.** | 6:20-cv-00876-ADA |

**AMENDED ORDER DENYING MERAKI'S OPPOSED MOTION
TO TRANSFER TO THE UNITED STATES DISTRICT COURT FOR THE
<u>NORTHERN DISTRICT OF CALIFORNIA [ECF No. 33]</u>**

Came on for consideration this date is Meraki's Opposed Motion to Transfer to the United States District Court for the Northern District of California (the "Motion"). ECF No. 33. Monolithic Power Systems, Inc. ("MPS Inc.") and Chengdu Monolithic Power Systems Co., Ltd. ("MPS Chengdu") (collectively "MPS" or "Plaintiffs") filed an opposition on March 12, 2021, ECF No. 36, to which Meraki Integrated Circuit (Shenzhen) Technology, Ltd. ("Meraki" or "Defendant") filed a reply on March 19, 2021, ECF No. 37.

On August 13, 2021, the Court denied Meraki's Motion. ECF No. 51. But shortly after entry of that order, the Federal Circuit issued clarifying guidance regarding certain factors relevant to Meraki's Motion. This Court therefore promptly reviewed the law and analysis in its prior order to cure any error. After careful consideration of the Motion, the Parties' briefs, and the applicable

1

law, the Court **DENIES** Meraki's Opposed Motion to Transfer to the United States District Court for the Northern District of California.[1]

## I. BACKGROUND

Plaintiff Monolithic Power Systems, Inc. is a Delaware corporation with its headquarters in Washington state, while Plaintiff Chengdu Monolithic Power Systems Co., Ltd. is a Chinese corporation (together, "MPS"). ECF No. 21 ¶¶ 19–20. MPS filed this action against Defendant Meraki, a Chinese corporation, asserting claims of patent infringement, trade secret misappropriation, tortious interference, and unfair competition. *Id.* ¶¶ 88–164. Claims 1–3 in MPS's amended complaint (patent infringement and federal trade secret misappropriation) are governed under federal law, claim 4 is governed by Texas state law, and claims 5–6 are governed by common law. *Id.* MPS also named Promate Electronic Co. Ltd. ("Promate") as a defendant, and Promate later agreed to a consent judgment acknowledging that, at Meraki's request and direction, it imported samples of the Accused Products to Sawblade Ventures, LLC ("Sawblade"), which is located in this District. ECF No. 20-1 at 2.

MPS separately filed a lawsuit in the Northern District of California ("NDCA") against Meraki's founders, Mr. Dong and Ms. Sheng, in their individual capacity, alleging that they breached numerous clauses in their employment agreements with MPS, in addition to other actions that have caused injury to MPS. *Monolithic Power Systems, Inc. v. Dong*, No. 4:20-cv-06752-JSW (N.D. Cal. Sept. 28, 2020) (the "California Action"). According to MPS, when Mr. Dong and Ms. Sheng began their employment at MPS, both signed employment agreements with forum selection clauses that dictate jurisdiction in Santa Clara County, California. ECF No. 36 at 3. Further

---

[1] This Amended Order **VACATES** and **SUPERSEDES** the Court's prior order, dated September 1, 2021. ECF No. 54.

according to MPS, Meraki is not a party to either employment agreement, nor could it have been because Meraki did not exist in 2016 when those agreements were executed, having been founded in April 2017, two weeks after Ms. Sheng resigned from MPS. *Id.* (first citing ECF Nos. 21-3, 21-4, and then citing ECF No. 21 ¶ 6).

## II. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Title 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public

3

factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. Courts evaluate these factors based on the situation that existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). The weight the Court gives to each of these assorted convenience factors will necessarily vary from case to case. *See Burbank Int'l, Ltd. v. Gulf Consol. Int'l, Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977). A court should not deny transfer where "only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013).

       The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. While "clearly more convenient" is not explicitly equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show that that factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

### III. ANALYSIS

**A.     Venue and Jurisdiction in the Transferor Forum**

The movant bears the burden of establishing personal jurisdiction and venue as to defendants in the transferee forum. *See Chirife v. St. Jude Med., Inc.*, No. 6:08-CV-480, 2009 U.S. Dist. LEXIS 50482, 2009 WL 1684563, at *1 (E.D. Tex. June 16, 2009). Proving that the transferee forum has subject-matter jurisdiction, personal jurisdiction, and proper venue is an explicit statutory requirement of the movant—not the respondent. It is also a threshold question. *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("[W]e have suggested that the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue."). "If it has not been shown that the transferee court could hear the case, the Court has no ability to transfer, regardless of how convenient or inconvenient the transfer might be." *Japan Display Inc. v. Tianma Microelectronics Co.*, No. 2:20-CV-00283-JRG, 2021 U.S. Dist. LEXIS 160256, at *8 (E.D. Tex. Aug. 25, 2021) (citing *Hoffman v. Blaski*, 363 U.S. 335, 340 (1960)).

Meraki argues that "to the extent that any U.S. district has personal jurisdiction over foreign corporation Meraki, Meraki may be sued in any judicial district." ECF No. 33 at 6 (citing 28 U.S.C. § 1391). So, "to the extent that it could have been brought in any U.S. judicial district, this case could have been filed in the Northern District of California." *Id.* Yet Meraki also "denies that personal jurisdiction exists over it in any judicial district of the United States" and "reserves the right to challenge the lack of personal jurisdiction over it in the U.S. District Court for the Northern District of California as well." *Id.* at 5 n.1.

Meraki cannot have its cake and eat it too. It cannot first argue that transfer to the NDCA is proper because this case "could have been brought" there, while also reserving for itself the right to argue, once in the NDCA, that MPS could *not* have brought the case there. To the contrary, Meraki carries the burden here of establishing, affirmatively, that personal jurisdiction lays in the Northern District of California for the claims in suit. Meraki has not met that burden. It has not shown or even addressed whether Meraki is subject to jurisdiction in the NDCA under general personal jurisdiction, specific personal jurisdiction, and/or pendant personal jurisdiction.

Because Meraki failed to establish that the Northern District of California has personal jurisdiction over Meraki for the claims asserted here (or that venue is proper), and because that is a threshold issue, the Court need not continue with the transfer analysis. But, to establish a complete record, the Court will nonetheless consider the private and public interest factors.

**B.      Private Interest Factors**

1. Relative Ease of Access to Source of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 U.S. Dist. LEXIS 171102, at *5 (W.D. Tex. Sep. 10, 2019). This factor relates to the relative—not absolute—ease of access to non-witness evidence. *See In re Radmax*, 720 F.3d at 288; *In re Apple*, 979 F.3d at 1339. And "the movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple*, 979 F.3d at 1340. In *Radmax*, the Fifth Circuit held that, though the distance between two divisions was slight, because all the documents and physical evidence were in the transferor division, this factor favored transfer. 720 F.3d at 288.

The Fifth Circuit has held that, even in the context of electronic documents that can be accessed anywhere on earth, this factor is not superfluous. *See Volkswagen II*, 545 F.3d at 316.

Though having persistently characterized that holding as antiquated in the setting of a modern patent dispute, this Court will continue to analyze this factor with a focus on the location of: physical documents and other evidence; and the hardware storing relevant electronic documents. *See, e.g.*, *Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*, No. 6-20-CV-00731-ADA, 2021 U.S. Dist. LEXIS 137400, at *7 & n.1 (W.D. Tex. July 22, 2021).

Meraki argues that "the design and layout of MPS's synchronous rectifier products . . . MPS's customer list and pricing information, and the laptop computers assigned to Mr. Dong and Ms. Sheng . . . are located in San Jose," where MPS purportedly maintains an office. ECF No. 33 at 6.[2] It continues that, because Mr. Dong worked in San Jose for MPS, "any evidence" related to him is located in California. *Id.* at 7 (citing ECF No. 21 ¶¶ 6, 53). And, because Meraki is incorporated and operates in China, all relevant documents are in Shenzhen, China, which is located much closer to Northern California than to Texas. *Id.*

MPS concedes that "some of MPS's documents are located in California," but states that MPS's trade secrets and laptops used by Mr. Dong and Ms. Sheng will only be made available for inspection by Meraki's counsel and experts, and their convenience is owed no weight. ECF No. 36 at 7 (citing *Waldeh v. Tackett*, 2020 WL 6324319, at *2 (W.D. Tex. Oct. 27, 2020)). Otherwise, MPS's documents are located in the state of Washington (where MPS is headquartered) and China. *Id.* MPS alleges that non-parties like Sawblade and Texas Instruments possess documents related to importation. *Id.* at 8.

The Court finds that this factor favors transfer. MPS concedes that some evidence that it maintains is located in California, but the Court diminishes the weight of this evidence because

---

[2] Meraki also argues that the California case is relevant to this factor, but the Court will not double count that evidence and finds it more relevant under the "practical problems" factor, where such parallel litigations are typically considered.

MPS will only make some of that evidence available to counsel and experts, whose convenience is not considered, *Waldeh*, 2020 WL 6324319, at *2. MPS has otherwise credibly alleged that it maintains relevant documents in the state of Washington, where it is headquartered. It also maintains documents in China, where Chengdu MPS is based and where it developed the patented technology. *See* ECF No. 36 at 7. Meraki is also a Chinese company and, in a patent infringement case, "the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech*, 566 F.3d at 1345. Yet, according to the Federal Circuit, this factor is not affected where a substantial amount of evidence resides in China and Washington state. *See In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014) ("The comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums.").

As to evidence residing in Texas, the Court finds that Sawblade almost certainly maintains some evidence relevant to personal jurisdiction and indirect infringement in Texas, where Sawblade is located. Yet MPS's reliance on documents at Texas Instruments is speculative and thus owed little to no weight; MPS states that it is only "likely" that the relevant documents rest with Texas Instruments. ECF No. 36 at 8 n.3.

The evidence maintained in California almost certainly overwhelms what evidence Sawblade maintains in Texas, which has limited utility in this case when compared to the evidence likely maintained in California. This factor, then, favors transfer.

2.   Cost of Attendance of Willing Witnesses

"The convenience of witnesses is the single most important factor in the transfer analysis." *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *17. The Fifth Circuit has established the "100-mile rule," providing that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses

8

increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05.

The Federal Circuit has rendered the 100-mile rule nugatory by holding that courts should not be apply the rule "rigidly." In some cases, the Federal Circuit has nullified the 100-mile rule by holding that, where witnesses would be required to travel a significant distance no matter where they testify, those witnesses will only be slightly more inconvenienced by having to travel to, for example, California, compared to Texas. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). In other cases, it has neutered the 100-mile rule by holding that "[t]he comparison between the transferor and transferee forum is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014). In yet other cases, the Federal Circuit has altogether disregarded the Fifth Circuit's 100-mile rule and its eponymous emphasis on distance, opting to rely only on hypothetical travel-time statistics. *See In re Google LLC*, No. 2021-170, 2021 U.S. App. LEXIS 29137, at *12 (Fed. Cir. Sep. 27, 2021).

*Party Witnesses*. The Federal Circuit has chastised this Court for according little weight to the convenience of party witnesses. The Federal Circuit has recognized that "an employer's cooperation in allowing an employee to testify may diminish certain aspects of inconvenience to the employee witness (for instance, the employee is not acting contrary to their employer's wishes)." *In re Hulu, LLC,* No. 2021-142, 2021 U.S. App. LEXIS 22723, at *13 (Fed. Cir. Aug. 2, 2021). Yet, in a spate of recent opinions, the Federal Circuit backtracked, holding that convenience-to-the-witnesses factor is *not* attenuated at all when the witnesses are employees of the party calling them. *See, e.g.*, *In re Juniper Networks, Inc.*, No. 2021-160, 2021 U.S. App. LEXIS 29036, at *10 (Fed. Cir. Sep. 24, 2021). That decision is out of step with decades of

jurisprudence springing from courts in the Fifth Circuit and elsewhere. *See, e.g.*, *Frederick v. Advanced Fin. Sols., Inc.*, 558 F. Supp. 2d 699, 704 (E.D. Tex. 2007) (according little weight to the convenience of party employee witnesses); *Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992) (same); 15 Wright & Miller, Fed. Prac. & Proc. Juris. § 3851 (4th ed.) ("[T]he convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain their presence at trial."). And, according to the Federal Circuit, courts cannot wield the practical fact that only a few non-party witnesses will testify at trial to categorically ignore prior-art witnesses or give less weight to laundry lists of third-party witnesses. *In re Juniper*, 2021 U.S. App. LEXIS 29036, at *11.

Meraki asserts that Mr. Dong's and Ms. Sheng's former colleagues from MPS reside in the transferee district. ECF No. 33 at 8. Meraki does not identify any former colleague by name. Meraki does not describe what knowledge these former colleagues may have. This would trouble the Court were it not for MPS conceding that relevant MPS witnesses reside in California. ECF No. 36 at 11. And neither side identifies a party witness residing in Texas.

The parties do not dispute that there are relevant party witnesses residing in China. *Compare* ECF No. 33 at 8 *with* ECF No. 36 at 10. MPS also asserts that relevant witnesses reside in Washington state, where MPS is headquartered. ECF No. 36 at 10. MPS further supposes that Mr. Dong and Ms. Sheng may be residing in New Hampshire and North Carolina respectively. Yet, again, "[t]he comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota*, 747 F.3d at 1340. So the convenience of these party witnesses is owed no deference.

Accordingly, because MPS concedes that there are relevant party witnesses in California, but none in Texas, the Court finds that this factor favors transfer.

3. <u>Availability of Compulsory Process</u>

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014). The Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018); *see also In re Hulu*, 2021 U.S. App. LEXIS 22723, at *10 ("[W]here . . . the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness."). *But see In re Apple*, 581 F. App'x 886, 891 (Fed. Cir. 2014) (Bryson, J., dissenting) (collecting cases where courts required the movant to show witnesses would be unwilling to travel to the transferor district).

The only non-party witness identified is Scott Winning, President and CEO of Sawblade, who "was in contact with Meraki concerning its importation of the Accused Products and resides within this District." ECF No. 36 at 10 & n.8. While MPS deems him a "critical non-party witness" with information relevant to this Court's jurisdiction over Meraki, *id.* at 9, Meraki states that he

11

"possesses no information that will likely be used at trial," ECF No. 37 at 3. As the Fifth Circuit has held, "[a]lthough these factors are usually considered in connection with securing the witnesses' and documents' availability for trial, they also necessarily implicate the ease of conducting merits-related discovery in a location which is near the relevant witnesses and documents." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1291 (5th Cir. 1994). Mr. Winning, as a Meraki customer, or at least the recipient of samples from Meraki, has information relevant to the merits of indirect infringement. *See Brooks Instrument, LLC v. MKS Instruments, Inc.*, No. 6:10-CV-221, 2011 U.S. Dist. LEXIS 155941, at *19 (E.D. Tex. Feb. 14, 2011) ("MKS's third-party customer, Applied Materials, who may have evidence or witnesses relevant to indirect infringement is located in Texas.").

Meraki otherwise merely asserts that it would call "specific" non-party witnesses like "Mr. Dong's and Ms. Sheng's non-party former MPS colleagues in California." ECF No. 37 at 3–4. But it fails to identify these "specific" non-party witnesses with *any* specificity. The Court will not credit these vague allusions. If they are former MPS *employees* who were colleagues of Mr. Dong and Ms. Sheng, then they may well qualify as non-party witnesses. But the Court cannot corroborate their existence, much less their employment status, without more.

Accordingly, because the only identified non-party witness resides within the Western District of Texas, this factor slightly weighs against transfer.

### 4. Practical Problems

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer" but delay in already protracted litigation may account for some weight. *In re Radmax*, 720 F.3d at 289.

"Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). The interests of justice may be best served by transferring ancillary matters pending in other forums to the forum of the main action, particularly if the main action is complex. *Bank of Texas v. Computer Statistics, Inc.*, 60 F.R.D. 43, 45 (S.D. Tex. 1973). "[T]he ability to transfer a case to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of such a transfer." *In re Apple*, 979 F.3d at 1344. But district courts should not rely "on considerations of judicial economy arising after the filing of the lawsuit or the transfer motion," such as, for example, suits filed in the transferor district after a request to transfer. *In re Netscout Sys.*, No. 2021-173, 2021 U.S. App. LEXIS 30500, at *12 (Fed. Cir. Oct. 13, 2021). Further, "the mere co-pendency of infringement suits in a particular district" does not automatically tip transfer in one direction or the other. *Id.* at *13.

Meraki argues that this factor favors transfer because this case is in its early stages. ECF No. 33 at 9. But merely filing a motion to transfer early does not move this factor from neutral. Meraki continues, asserting that judicial economy favors transfer because MPS chose to file the California Action, which asserts claims "substantively analogous" to at least Claims 3–6 here and based on the same facts. ECF No. 33 at 10 (citing *Ferens v. John Deere Co.*, 494 U.S. 516 (1990)). Though that case may involve similar claims, the defendants are different from those here. And the mere existence of a similar, co-pending case in the transferee forum does not automatically tip this factor in favor of transfer. *See In re Netscout*, No. 2021-173, 2021 U.S. App. LEXIS 30500, at *13.

For its part, MPS relies on the schedule in the California Action, which is lagging behind this case's schedule, to state that transfer to the Northern District of California will delay

resolution of this case. ECF No. 36 at 11–12. While this reasoning is persuasive, the Court finds that such considerations are more appropriately analyzed under the "Court Congestion" public-interest factor. Relatedly, MPS argues that moving this case to California could "cause harm to justice if the distinctions between the two sets of defendants are not clearly articulated to the triers of fact." ECF No. 36 at 12. The Court is confident that the NDCA is more than capable of addressing such concerns were they to arise.

MPS also asserts that, because Sawblade is located here, that jurisdictional discovery would be more expedient, assumedly due to this Court's proximity to Sawblade. ECF No. 36 at 12. Even if this Court deemed this a proper consideration under this factor, it rejects the premise that as an entity's distance from a court increases, discovery from that entity slows.

Finally, MPS also asserts that this factor favors maintaining this case here because Promate entered into a consent order for which this Court retains exclusive jurisdiction. According to MPS, Meraki has erred in not addressing "what would happen to Promate's consent order and whether it would have to be severed into two separate cases to proceed." ECF No. 36 at 12. The Court finds this argument persuasive. "[I]t will not serve the interests of justice to transfer a case at this posture where the Court already has entered a [consent] judgment against one of the defendants." *Frickey v. Thompson*, 136 F. Supp. 3d 1300, 1315 (D. Kan. 2015). Section 1404(a) contemplates only the transfer of an entire civil action, and there is no basis on which to transfer this entire civil action, including the consent judgment against Promate, to the Northern District of California. *Cf. PNC Bank v. Mac Meetings & Events*, No. 4:18-CV-1967-SPM, 2020 U.S. Dist. LEXIS 116649, at *32 (E.D. Mo. July 1, 2020). That said, the fact of the consent judgment alone would not justify maintaining this action here if, independent of the consent judgment, Meraki shows that transfer is clearly more convenient.

The Court holds that the consent judgment and the California Action cancel one another out. This factor is, therefore, neutral.

### C. Public Interest Factors

#### 1. Local Interests

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung Elecs. Co.*, Nos. 2021-139, 2021-140, 2021 U.S. App. LEXIS 19522, at *20 (Fed. Cir. June 30, 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks*, 2021 U.S. App. LEXIS 29036, at *14 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)).

Neither company has an overwhelming presence in this District or the NDCA: MPS Inc. is headquartered in Washington state, and MPS Chengdu and Meraki are Chinese corporations. But MPS Inc., at least, has some presence California and the events giving rise to Claims 3–6 of this suit appear to have occurred in California or are at least tied to MPS's California office.

As to the patent infringement claims, though personal jurisdiction may derive from the importation of Meraki products into Texas, MPS's allegations of indirect infringement almost certainly cast a wider net covering more than just Texas. And while this Court believes that the sale of infringing products to Texas residents establishes a local interest, precedent to the contrary binds this Court. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) ("[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue.").

Accordingly, this factor weighs in favor of transfer.

### 2. Familiarity of the Forum With Law-At-Issue

The familiarity of the forum state with governing law should only be considered a public-interest factor weighing in favor of transfer if the governing law is "exceptionally arcane." *See Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 68 (2013). The Supreme Court has held that "federal judges routinely apply the law of a State other than the state in which they sit." *Id.*

Meraki argues that California state law will govern MPS's trade secret, tortious interference, and unfair competition claims, due to an NDA with a California choice-of-law-provision. ECF No. 33 at 11. Meraki is not, however, party to that agreement and has not shown why provisions of that NDA have any bearing on this case.

Claims 1–3 in this case, patent infringement and federal trade secret misappropriation, are brought under federal law, which this Court and the NDCA are likely equally familiar with. And Claim 4 is brought under Texas's Uniform Trade Secrets Act, but the NDCA is just as capable of applying Texas law as is this Court.

Accordingly, this Court finds that this factor is neutral.

16

3. Conflict of Laws

The final public interest factor involves the appropriateness of having the case in a jurisdiction in light of any potential problems in conflicts of laws. Federal patent laws are statutory and substantive decisions under these laws are reviewed by the Federal Circuit in all districts, eliminating any possibility of a conflict-of-laws issues with respect to those claims. Meraki argues that, since California state trade secret laws are different than Texas state trade secret laws, there is a conflicts-of-law issue. Meraki has not, however, identified what conflict could actually arise. The Court, therefore, finds this factor neutral.

4. Court Congestion

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. A faster average time to trial means more efficient and economical resolutions of the claims at issue. That said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344. Moreover, when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

Federal Circuit jurisprudence has muddled what facts are relevant to this factor. One recent opinion held that a difference in the number of pending cases between the transferor and transferee forums is "too tenuously related to any differences in speed by which these districts can bring cases to trial." *Id*. Yet in an even more recent opinion the Federal Circuit has stated that a "proper" analysis "looks to the number of cases per judgeship and the actual average time to trial." *In re Juniper Networks, Inc.*, No. 2021-156, 2021 U.S. App. LEXIS 29812, at *8 (Fed. Cir. Oct. 4, 2021). The Federal Circuit has not squared why cases per judgeship matter if, according to *Genentech*, time to trial is dispositive of this factor.

The only statistics provided by the parties are cases per district. MPS states that the NDCA's 12,000 pending cases versus 7,800 for this District illustrates how the case will be heard significantly faster at this Court rather than in the NDCA. ECF No. 36 at 12. The Federal Circuit has recently held, however, that "the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics." *In re Juniper Networks*, 2021 U.S. App. LEXIS 29036, at *18. Accordingly, this factor is neutral.

## IV. CONCLUSION

Having considered the private and public interest factors, Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
| --- | --- |
| Relative ease of access to sources of proof | Weighs in favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Weighs slightly against transfer |
| Cost of attendance for willing witnesses | Weighs in favor of transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Weighs in favor of transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

Four of the eight factors are neutral. One slightly favors maintaining the suit here. And three favor transfer. Given the foregoing, the Court finds that Meraki has shown that the NDCA is clearly more convenient than the Waco division. But because Meraki failed to satisfy the threshold issue of personal jurisdiction in the NDCA, Meraki's Motion is **DENIED**.

SIGNED this 5th day of November, 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE