IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **MONOLITHIC POWER SYSTEMS, INC. and CHENGDU MONOLITHIC POWER SYSTEMS CO., LTD.,** §§§§§§§§§<br>Plaintiffs, <br><br>*v.* <br><br>**MERAKI INTEGRATED CIRCUIT (SHENZEN) TECHNOLOGY, LTD. et al.,** <br>Defendants. | NO. 6:20-CV-00876-ADA |

## ORDER GRANTING PLAINTIFFS' RENEWED MOTION FOR ALTERNATIVE SERVICE
[ECF No. 120]

Before the Court is Plaintiffs' Renewed Motion for Leave to Effect Alternative Service on Chinese Defendants QingMi (Beijing) Technology Co., Ltd. and Shenzen Times Innovation Technology Co. Ltd., filed on April 7, 2022. ECF No. 120, hereinafter, the "Motion." Shenzen filed a response on April 22, 2022[1] (ECF No. 123), to which MPS replied on April 29, 2022 (ECF No. 124). After careful consideration of the Motion and the applicable law, the Court **GRANTS** Plaintiffs' Motion.

### I. BACKGROUND

Plaintiffs Monolithic Power Systems, Inc. and Chengdu Monolithic Power Systems Co., Ltd. (collectively, "MPS") sued Meraki Integrated Circuit (Shenzen) Technology, Ltd. ("Meraki"), Promate Electronic Co. Ltd., Qingmi (Beijing) Technology Co. Ltd. ("QBT"), Shenzen Times Innovation Technology Co. Ltd. ("STIT"), and Baseus Accessories LLC ("Baseus"), alleging that

---

[1] Under Local Civil Rule CV-7(D)(2), STIT's response was due fourteen days after MPS's renewed motion was filed, April 21, 2022. STIT filed its response a day after the deadline on April 22, 2022, and did so without requesting an extension. District courts have the discretion to strike late-filed briefs, but the Court declines to do so here. *See Rincon v. Home Depot U.S.A., Inc.*, No. 3:17-CV-02909-X, 2019 WL 6118406, at *3 (N.D. Tex. Nov. 15, 2019).

each of the defendants have infringed two patents, and that Meraki has committed several business torts. *See* ECF No. 63 (the "Third Amended Complaint"). QBT and STIT are Chinese corporations that, according to Plaintiffs, are based in Beijing and Shenzhen, respectively. ECF No. 120 at 4 (citing ECF No. 63 ¶¶ 23–24).

On September 27, 2021, MPS filed their original Motion for Alternative Service (ECF No. 70), which this Court denied without prejudice on October 25, 2021 (ECF No. 84), holding that Plaintiff should first attempt service of process through prescribed means before seeking alternative service. Having purportedly attempted the Hague Convention Service and having sought waiver of service from both Defendants, MPS now seeks an order from this Court permitting alternative service on QBT and STIT pursuant to Federal Rule of Civil Procedure 4(f)(3).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 4(h)(2) states that a foreign corporation served outside the United States is to be served "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2). "Rule 4(f)(3) provides that the Court may authorize service on a foreign individual 'by other means not prohibited by international agreement.'" *STC.UNM v. Taiwan Semiconductor Mfg. Co. Ltd.* ("*STC.UNM v. TSMC*"), No. 6:19-cv-261-ADA, 2019 U.S. Dist. LEXIS 231994, at *3 (W.D. Tex. May 29, 2019) (quoting Fed. R. Civ. P. 4(f)(3)). "Thus, so long as the method of service is not *prohibited* by international agreement the Court has considerable discretion to authorize an alternative means of service." *Id.* (citing *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002)).

To be sure, the Federal Rules of Civil Procedure do not demand that a plaintiff "attempt to effect service under Rule 4(f)(1) before requesting the authorization of an alternative method of service pursuant to Rule 4(f)(3)." *UNM Rainforest Innovations v. D-Link Corp.*, No. 6-20-cv-

00143-ADA, 2020 U.S. Dist. LEXIS 122328, at *4–5 (W.D. Tex. July 13, 2020) (quoting *Affinity Labs of Texas, LLC v. Nissan N. Am. Inc.*, No. WA:13-cv-369, 2014 U.S. Dist. LEXIS 185740, 2014 WL 11342502, at *1 (W.D. Tex. July 2, 2014)). Indeed, "service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' . . . It is merely one means among several which enables service of process on an international defendant." *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) (quoting *Forum Fin. Grp. v. President & Fellows of Harvard Coll.*, 199 F.R.D. 22, 23 (D. Me. 2001)). But, as this Court has recognized, "district courts are more likely to permit alternative service by email if service in compliance with the Hague Convention was attempted." *Terrestrial Comms LLC v. NEC Corp.*, No. 6:19-cv-00597-ADA, 2020 U.S. Dist. LEXIS 106909 (W.D. Tex. June 17, 2020) (collecting cases). Indeed, this Court has recognized time-and-again that "principles of comity encourage the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service of process upon defendant." *Id.* at *6 (quoting *Midmark Corp. v. Janak Healthcare Private Ltd.*, No. 3:14-cv-088, 2014 U.S. Dist. LEXIS 60665, 2014 WL 1764704, at *2 (S.D. Ohio May 1, 2014)).

### III. ANALYSIS

A.  **Alternative Service is Available via Means Requested by Plaintiff**

MPS requests alternative service upon STIT and QBT by: (1) e-mail to Defendants' company emails at bd@chingmi.com and hrzp@baseus.com; (2) e-mail to QBT's CEO Mr. Haifeng Lin, at linhaifeng@chingmi.com, and to the LinkedIn account for STIT's CEO Mr. Shiyou He; and (3) U.S. mail and e-mail to QBT's registered U.S. trademark domestic representative and STIT's registered U.S. trademark attorney. ECF No. 120 (collectively the "Requested Methods").

The Court finds that the Plaintiffs' Requested Methods are not prohibited by international agreement. China is a signatory to the Hague Convention and has objected to service via "postal

channels" under Article 10(a). Article 10 does not reference electronic service, but courts are split on whether a signatory's objection to Article 10 constitutes an objection to electronic service. *See Habas Sinai Ve Tibbi Gazlar Istihsal A.S. v. Int'l Tech. & Knowledge Co.*, Civil Action No. 19-608, 2019 U.S. Dist. LEXIS 219724 at *8 (W.D. Pa. Dec. 23, 2019) (collecting cases). Consistent with this Court's recent ruling in *Sinox Co. Ltd. v. YiFeng Mfg. Co.*, No. 6:21-CV-01022-ADA, 2022 WL 1017916, at *2 (W.D. Tex. Apr. 5, 2022), the Court agrees with the authorities holding that a country's objection to postal service does not constitute an objection to electronic service. Accordingly, no international agreement prohibits the Requested Methods of service upon Defendants.

### B. Hague Convention Service has been Attempted and Alternative Service is Justified

China, as a signatory of the Hague Convention, has explicitly objected to the service provisions in Article 10 of the Hague Service Convention. *See Hyundai Merchant Marine Co. Ltd. v. Grand China Shipping (Hong Kong) Co. Ltd.*, 878 F. Supp. 2d 1252, 1261 (S.D. Ala. 2012). Service in China pursuant to the Hague Convention requires that all documents served be written in Chinese or that a Chinese translation be attached. *See Cincinnati Ins. Co. v. Belkin Corp.*, No. 07-0615-WS-C, 2008 WL 60402, at *1 (S.D. Ala. Jan. 2, 2008); *see also* 20 U.S.T. 362, Art. 5(3).

"The Hague Convention does not specify a time within which a foreign country's Central Authority must effect service, but Article 15 does provide that alternate methods may be used if a Central Authority does not respond within six months." Notes of Advisory Committee on 1993 amendments, Fed. R. Civ. P. 4(f). "Generally, a Central Authority can be expected to respond much more quickly than that limit might permit, but there have been occasions when the signatory state was dilatory or refused to cooperate for substantive reasons. In such cases, resort may be had to the provisions set forth in subdivision (f)(3)." *Id.* "Inasmuch as our Constitution requires that

reasonable notice be given, an earnest effort should be made to devise a method of communication that is consistent with due process and minimizes offense to foreign law." *Id.*

MPS asserts, in following this Court's previous denial, that they have attempted Hague Convention Service. ECF No. 120 at 4. MPS initiated Hague Convention Service on November 2, 2021, which was nearly seven months ago. *Id.* at 7. MPS used Process Server One to initiate Hague Convention Service and received workorders indicating that service for both Defendants was "transferred to the court for serving" on December 27, 2021. ECF No. 120-1 (the "Pierce Decl.") ¶ 3. Process Server One reported as of April 1, 2022, that the documents had been transferred to the Supreme People's Court "for further processing." *Id.*

Interestingly, STIT made an appearance in this Case "through counsel for the purpose of filing its Opposition to Plaintiffs' Renewed Motion for Leave to Effect Alternative Service." ECF No. 123 at 1 n.1  STIT argues the Court should deny MPS's request for alternative service because (1) MPS has failed to show that it has attempted Hague Service; (2) MPS failed to show that the attempt has been unsuccessful; and (3) the alternative service options do not comport with due process.  Because of STIT's appearance in the matter, Plaintiff's Reply "revises the requested form of alternative service as to [STIT] to include service on [STIT]'s counsel of record in this case." ECF No. 124 at 1.  For the reasons that follow, the Court declines to hold Plaintiff to STIT's unreasonably high bar for alternative service.

STIT claims that "MPS failed to show that the attempt to effect service on Times has been unsuccessful," and that purported Hague Service was deficient due to a lack of required translation (citing Hague Service Convention, Art. 5(3)) and because it was purportedly delivered to the wrong Chinese court.  ECF No. 123 at 2–3. STIT argues, without proof, that MPS sent the service documents to the Supreme People's Court instead of the Ministry of Justice, which it asserts is the

correct Central Authority for Hague Convention Service. *Id.*; *see also Hague Conference on Private International Law (HCCH)*, https://www.hcch.net/en/states/authorities/details3/?aid=243 (last visited on May 13, 2022). STIT also claims that the current delay of service is in line with average Hague wait times of six months for foreign service. ECF No. 123 at 3–4. MPS, in reply, claims that a translation was provided in the initial service (ECF No. 124-2), and that Process Server One is also a recognized process server by the Chinese Central Authority, ECF No. 124-3.

This Court finds that effective Hague Convention Service was attempted and the window of reasonable delay has passed. *See* Notes of Advisory Committee on 1993 amendments, Fed. R. Civ. P. 4(f). The Court finds that, based on the materials provided to the Court (namely the line item receipts and Process Server One website), a translation was provided with the attempted Hague Service, and that service was delivered to the Hague designated Central Authority— meeting the requirements indicated above. *See* 20 U.S.T. 362, Art. 5(3); *see also Hague Conference on Private International Law (HCCH)*, https://www.hcch.net/en/states/authorities/details3/?aid=243 (last visited on May 13, 2022). Not only has the Hague-recommended six months window elapsed since MPS initiated Hague Service, but other courts have found that it is likely that service could be delayed even further, and as much as two years. *Victaulic Co. v. Allied Rubber & Gasket Co.*, Case No. 3:17-cv-01006-BEN-JLB, 2020 U.S. Dist. LEXIS 82150, at *3 ("The Chinese Central Authority's reply to [plaintiff's] request for a status update aptly illustrates this point. 'On August 14, 2018... the Ministry of Justice in China noted that service is "time-consuming and not efficient" and confirmed that it often takes more than two years to complete.'"). Given the potential for likely further delays, and the sufficient showing that Plaintiff attempted Hague Convention Service, the Court finds that alternative service of QBT and STIT is appropriate here.

### C. Plaintiff's Requested Methods Comport with Due Process

Because the claims were brought in the Western District of Texas, an alternative method of service of process is valid if it complies with Texas's long-arm statute. Courts have repeatedly interpreted the Texas long-arm statute "to reach as far as the federal constitutional requirements of due process will allow." *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996); *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991); *U-Anchor Adver. Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1997). To satisfy the constitutional requirements of due process, the method of service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Due process is satisfied when efforts at giving notice provide fundamental fairness by exhibiting a reasonable probability of actual notice. *Id.* at 317–18, 70 S.Ct. 652.

MPS relies on a previous order from this Court as the basis for finding the Requested Methods to be sufficient. *See Asetek Danmark A/S f/k/a Asetek A/S v. Shenzhen Apaltek Co.*, Case No. 6-21-cv-00501, Dkt. 10 [Dkt. 70, Ex. 1] (W.D. Tex. July 21, 2021). Evaluating due process considerations is a fact intensive determination that must be considered on a case-by-case basis, and the Court must evaluate the Requested Methods against the relevant due process standards of given the facts before the Court.

STIT asserts that, in the context of the request for service to Mr. He Shiyou's LinkedIn profile, alternative service would be ineffective due to the lack of a translation. ECF No. 123 at 6 (citing *James Avery Craftsman, Inc. v. Sam Moon Trading Enters.*, Civil No. SA-16-00463-OLG, 2018 U.S. Dist. LEXIS 219083, at *21–22 (W.D. Tex. July 5, 2018)). Notably, this same decision indicates that "[s]ervice of a translated copy of the summons and complaint may have been more appropriate in light of the Hague Convention's requirement that defendants in China be served

with translated copies of any summons and complaint." *Id.* at *22. While this was noted in the context of previous service attempts, the Court believes that in light of the Hague Service Convention's translation requirement, any of Plaintiff's alternative services of process (as discussed below) should include a translation so as to exhibit a "reasonable probability of actual notice." *WSOU Invs., LLC v. TP-Link Techs. Co.*, No. 6:20-CV-1012-ADA, 2021 WL 3914038, at *4 (W.D. Tex. Sept. 1, 2021).

      i.      *By Email to Designated Company Emails*

District courts throughout the Fifth Circuit agree that the Hague Service Convention does not explicitly prohibit service by email. *See, e.g.*, *Whirlpool Corp. v. YiHangGou Trading Co.*, No. 2:20-cv-00341-JRG-RSP, 2021 WL 1837544, *2–*3 (E.D. Tex. May 7, 2021) (allowing Chinese and Canadian defendants to be served by email as not prohibited by international agreement); *WSOU Investments LLC v. Oneplus Tech. (Shenzen) Co., LTD.*, 2021 U.S. Dist. LEXIS 127056, at *11–*12 (W.D. Tex. 2021) ("[E]-mail service of process. . . was not prohibited by the Hague Convention."). However, as this Court has previously stated, some courts have held that serving process on a foreign defendant via email does not satisfy due process unless the plaintiff previously communicated with the defendant through the relevant email address, or the defendant indicated to the plaintiff that the email address was its preferred method of communication. *See Sinox Co. Ltd. v. YiFeng Mfg. Co. Ltd.*, No. 6:21-cv-01022-ADA, 2022 WL 1017916 n.1 (W.D. Tex. April 4, 2022). Other courts have found due process satisfied where the defendant does business online and that the plaintiff has shown that the foreign defendant uses the particular email address to conduct business relevant to the matters at issue in suit. *Id.* at n.2. As such, e-mail is reasonably calculated upon showing of (1) a response from the indicated email or election of preferred method of contact; or (2) an email address used to conduct business online related to the matters in suit.

a. *As For STIT*

MPS has requested to serve "the designated company email," present as a "contact-us" address, hrzp@baseus.com. ECF No. 120 at 4, 6. MPS has previously sent an e-mail related to waiver of service to this email account on April 7, 2022, which did not "bounce back." Pierce Decl. ¶ 8. Additionally, MPS provides evidence that the email address is valid from the search results of the website "email-checker.net." ECF No. 120 at 6. At this time, MPS has not indicated any response from STIT to this email. *Id.* at 8. STIT contends that "there has been no showing in this case that any of the email addresses that MPS has identified are valid or that any service of process sent to these email addresses would be received." ECF No. 123 at 5. This Court cannot agree that "no showing" has been made; Plaintiff's two briefs, declaration, and exhibits suggest otherwise. In fact, the demonstration that the email has not bounced back and was a valid address is sufficient as long as the email is used for the purposes of conducting business online. *Sinox*, 2022 WL 1017916, at *5 ("The Complaint reflects that [defendant] is doing business online. For example, [plaintiff] alleges that [defendant] sells suitcases on Amazon and its own website . . . The Court is therefore satisfied that service upon electronic addresses associated with [defendant]'s online business is reasonably calculated to apprise [defendant] of this Action") (internal citation omitted).

Plaintiffs (in their original motion) included as exhibits, screenshots depicting sales from STIT listed on Walmart and Amazon's websites. *See* ECF No. 70-2, 70-3, 70-4. This Court has previously recognized that sales listed on Amazon.com is a sufficient indication of online business. *Sinox*, 2022 WL 1017916, at *5. STIT also claims that MPS has failed to show that the email address is regularly attended. ECF No. 123 at 5. This Court disagrees, as STIT is in the best position to provide that the indicated email address is not active or well attended, which it has not

done. Here, the email address is used in connection with a "contact-us" page that is intended to be used to conduct business online with the products related to this suit. *See* ECF No. 70-2, 70-3, 70-4. For these reasons, email to STIT's corporate email would be reasonably calculated to notify the Defendant of the action.

   b.  As For QBT

MPS has requested to serve "the designated company email," present as a "contact-us" address, bd@chingmi.com. ECF No. 120 at 4, 6. MPS has previously sent an e-mail related to waiver of service to this email account on April 7, 2022, which did not "bounce back." Pierce Decl. ¶ 7. MPS again relies on a showing that this is a valid email address, with evidence from the website "email-checker.net." ECF No. 120 at 6. For reasons similar to those discussed above, the email address is used for the purposes of conducting online business, namely on Amazon.com and Walmart.com, with the products related to this suit. Therefore QBT's contact email is a reasonably calculated method for notifying QBT of this action.

   ii.  By LinkedIn for STIT's CEO

Courts are split as to whether service through social media platforms is sufficient for purposes of due process. However, this District and the Northern District of Texas have both previously allowed service through social media accounts. *See Indeed, Inc. v. Kahn*, 2021 U.S. Dist. LEXIS 256156 (W.D. Tex. May 28, 2021); *see also Taylor v. El Centro Coll.*, 2022 U.S. Dist. LEXIS 33227 (N.D. Tex. Feb. 25, 2022). LinkedIn is a social media platform aimed at professionals that allows for contact through their direct messaging services. MPS has previously sent a message to STIT's CEO Mr. He Shiyou's LinkedIn page without response. Pierce Decl. ¶ 9. STIT asserts that MPS has failed to show that the LinkedIn account is "active[,] current[,] and contains [Mr. Shiyou's] valid contact information." ECF No. 123 at 7. On this record, the Court

believes that service to Mr. Shiyou's LinkedIn profile is also a method reasonably calculated to provide notice of the suit. This Court has previously granted alternative service through LinkedIn, and other courts have additionally allowed other non-traditional means of service, such as service through Amazon's messaging center. *See See Asetek Danmark A/S f/k/a Asetek A/S v. Shenzhen Apaltek Co.*, Case No. 6-21-cv-00501, Dkt. 10 [Dkt. 70, Ex. 1] (W.D. Tex. July 21, 2021); *see also Noco Co. v. Zhejiang Quingyou Elec. Commerce Co.*, No. 1:20cv1170, 2021 WL 374617 at *——–, 2021 U.S. Dist. LEXIS 20414 at *11 (N.D. Ohio Feb. 3, 2021)

    iii.    By Email to QBT's CEO

Service to the E-mail for QBT's CEO is sufficient so long as it meets the standards of due process. *See Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332 (S.D.N.Y. 2015) (permitting service by email *after* plaintiff's attempts to serve Chinese defendant via the Hague Convention were unsuccessful). MPS has requested to serve the email address of QBT's CEO, lin.haifeng@chingmi.com. ECF No. 120 at 4, 6. MPS has previously sent an e-mail related to waiver of service to this email account on April 7, 2022, which did not "bounce back." Pierce Decl. ¶ 7. Again, MPS relies on a showing that the email address is valid from search results of the website "email-checker.net." ECF No. 120 at 6. At this time, MPS has not indicated a response from QBT's CEO to the email that was sent. *Id.* at 8. Based on these showings, and for the same reasoning as discussed above, sending service via e-mail to lin.haifeng@chingmi.com is reasonably calculated to apprise Defendant of the current action.

    iv.    By Service to STIT's Registered Trademark Attorney and QBT's Trademark Representative

MPS has also requested alternative service for STIT's registered trademark attorney and QBT's domestic trademark representative. ECF No. 120 at 6. In response, STIT asserts that MPS has not provided evidence that the trademark counsel maintains "adequate communication

between the individual and the attorney." ECF No. 123 at 6 (citing *STC.UNM*, 2019 U.S. Dist. LEXIS 239369, at *10; *compare Prediction Co. LLC v. Rajgarhia,* 2010 WL 1050307, at *2 (S.D.N.Y. Mar. 22, 2010) (finding adequate communication between defendant and his counsel when the parties had "been in recent contact"), *with Madu,* 265 F.R.D. at 116 (citing the "absence of communication" between a firm and two unserved parties when denying plaintiff's request for leave to serve process on counsel).

The Trademark Manual of Examining Procedures ("TMEP") requires representation based on where an applicant is domiciled. TMEP Ch. 601. "An applicant or registrant whose domicile is not located within the United States or its territories must be represented by a qualified U.S. attorney." *Id.* (citing 37 C.F.R. § 2.11(a)). Additionally, "[a]n applicant or registrant that is not domiciled in the United States may designate a domestic representative (i.e., a person residing in the United States on whom notices or process in proceedings affecting the *mark* may be served)." 37 C.F.R. § 2.24(a) (emphasis added).

The Court agrees that, on the present record, there is insufficient evidence to show that QBT "adequate communication between the individual and the attorney" existed. For QBT's domestic representative, service of process for proceedings outside of those related to QBT's registered mark does not comport with due process and is likely in conflict with 37 C.F.R. § 2.24(a). For these reasons, service on the domestic representative would not be reasonably calculated to provide notice of this patent infringement action that only incidentally implicates the mark by association with the company and is not the subject of the Third Amended Complaint.

The registered attorney for STIT, however, is not bound by a similar limitation based on 37 C.F.R. § 2.11(a). Service upon U.S. counsel, designated as the trademark registered attorney, is supported by various courts. *See Freedom Watch, Inc. v. Org. of the Petroleum Exporting*

*Countries*, 766 F.3d 74, 83 (D.C. Cir. 2014) ("A number of courts ... have sanctioned service on United States counsel as an alternative means of service under Rule 4(f)(3) without requiring any specific authorization by the defendant for the recipient to accept service on its behalf."); *see also Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 565–66 (N.D.C.A. 2012) ("Due process does not require that the individuals served on behalf of foreign defendants have represented them or been authorized to accept service on their behalf"). Therefore, it is reasonably calculated that service upon STIT's registered trademark attorney will apprise Defendant of the present action. *See, e.g., Affinity*, 2014 WL 11342502, at *1–4; *RPost Holdings, Inc. v. Kagan*, No. 2:11-cv-238-JRG, 2012 WL 194388, at *2–3 (E.D. Tex. Jan. 23, 2012); *WorldVentures Holdings, LLC v. Mavie*, No. 4:18-cv-393, 2018 WL 6523306, at *14 (E.D. Tex. Dec. 12, 2018); *Canal Indem. Co. v. Castillo*, No. DR-09-cv-43-AM-CW, 2011 WL 13234740, at *2 (W.D. Tex. Mar. 30, 2011).

  v.  *By Service to Counsel for STIT*

Defendant STIT filed a response to the Motion through U.S. based counsel on April 22, 2022. ECF No. 123. In reply, MPS seeks to amend their initial request of service to include STIT's U.S. based counsel, asserting that service upon counsel remedies any due process deficiencies present in the Requested Methods. ECF No. 124 at 7–8. While "actual notice" is not necessary to satisfy due process right, evidence of actual notice more than "apprise[s] interested parties of the pendency of the action[.]" *Mullane*, 339 U.S. at 314; *see Jones v. Flowers*, 547 U.S. 220, 225, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006) ("[D]ue process does not require actual notice ..."); *see also DeJoria v. Maghreb Petroleum Expl., S.A.*, 804 F.3d 373, 387 (5th Cir. 2015) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)) ("while due process requires only 'reasonably calculated' notice, [defendant] had actual notice . . . which 'more than satisfie[s]' his due process rights and meets the bare minimum requirements of notice sufficient to enforce a

judgment."). This Court agrees that the response filed by STIT's counsel indicates an awareness of the present action and provides "actual notice" of the pendency of this action. *See Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 565–66 (N.D.C.A. 2012) ("Due process does not require that the individuals served on behalf of foreign defendants have represented them or been authorized to accept service on their behalf"); *see also Terrestrial Commc'ns LLC v. NEC Corp.*, No. 6:29-cv-00597, 2020 WL 3270832, at *4 (W.D. Tex. June 17, 2020) (noting likelihood defendant represented by U.S. counsel in suit is "already aware of the pending actions"). Coupled with the signature of receipt by STIT for a previous waiver of service request sent (ECF No. 120-10), it is likely that STIT "is already aware of the pending action[s] and demands service pursuant to the Hague Convention as a means of creating a procedural hurdle to timely litigation." *Id.* For these reasons, the Court finds service upon the U.S. based counsel for STIT (by email) is reasonably calculated to appraise STIT of the current action.

## IV. CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion for Alternative Service by email to QBT's and STIT's corporate emails (with translations); by email to QBT's CEO (with translations); to STIT's U.S. counsel in this action; STIT's registered trademark attorney; and by LinkedIn to STIT's CEO are **GRANTED**; and that service to QBT's domestic trademark representative is **DENIED**.

SIGNED this 2nd day of June, 2022.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE